## PAT WHITFIELD v. ASA WALDEN, District Judge.

No. A-5794. Opinion Filed Sept. 16, 1925.
(239 Pac. 266.)

See, also, 30 Okla. Cr. 279, 235 P. 929.

Culp & Culp, Hodge & Schenk, and Sigler & Jackson, for petitioner.

The Attorney General, G. B. Fulton, Asst. Atty. Gen., J. B. Dudley, and Ben F. Williams, for respondent.

DOYLE, J.  An application was made to this court for writ of mandamus to require Asa E. Walden, District Judge of the Eighth Judicial District, to certify his disqualification in a case wherein Pat Whitfield, petitioner, is charged by information filed in the district court of Carter county with the crime of murder, and alleging that said case is now pending before the said district judge, and that the said district judge is disqualified to try the same by reason of the fact that he is biased and prejudiced against petitioner to such an extent that he cannot have a fair and impartial trial. It is averred:

That "petitioner has been heretofore tried before Hon. Asa E. Walden for the crime involved in this action; that said trial lasted approximately one week; that during said trial said judge became violently antagonistic to this defendant and to his rights in said cause; that on one occasion Hon. George Culp, as one of the attorneys for defendant, made an objection to certain testimony, and said judge overruled said objection, whereupon said Culp attempted to dictate into the record the ground of his objection, and the court became violently angry at said Culp and in the presence of the jury threatened to fine him and to send him to jail; that during said trial Hon. H. H. Brown was making an argument on behalf of the state and was quoting and arguing what a juror who had been disqualified had said on his voir dire examination; that counsel for

the petitioner herein objected to this argument, whereupon the court reprimanded counsel, and threatened to send counsel to jail for making an objection, in the presence and hearing of the jury, and announced that he would not permit counsel for defendant to make an objection to any argument made by the counsel for the state."

It is further averred that while the jury were deliberating of their verdict the said judge asked counsel for the defendant to come to his chambers, and there informed counsel that the jury were unable to agree; that he wanted to discharge the jury; that he was going to sustain a motion for a change of venue in this case, and would do so on the following Monday morning; that counsel for defendant, relying upon his statement, agreed that they would in open court agree that the jury be discharged. The court ordered the jury to be returned to the courtroom, and after asking the foreman how they stood, and being informed that they stood 7 for acquittal and 5 for conviction, the court asked defendant's counsel if they would agree for the jury to be discharged; and, relying on the statement that a change of venue would be granted, counsel for d e f e n d a n t agreed for said jury to be discharged; that the court has since that time informed counsel for defendant that he could not grant said change of venue because it would ruin him politically.

It is further averred that said district judge gave the morning press an interview, which was published by the said press and was distributed throughout the country, wherein he referred to the fact that many jurors had disqualified in the Pat Whitfield case, and urged them not to do so in the future.

It is further averred that since said trial the said district judge has on many occasions discussed the facts in this case publicly, and has publicly declared this petitioner is guilty, that he ought to be sent to the penitentiary, and that he would be convicted and sent to the penitentiary.

It is further averred that said district judge on many occasions has requested petitioner's attorneys to file a motion to disqualify him and expressed the hope that the Criminal Court of Appeals would disqualify him, further stating that he would make no resistance to disqualification by the Criminal Court of Appeals; that he realized that he could not give this petitioner a fair and impartial trial; "that this petitioner, relying upon the statements and matters above mentioned, shows that the said district judge is disqualified in this case, and that this court should make an order disqualifying this judge; that he has heretofore presented to the said district judge his petition to disqualify the said judge, and the same has been overruled, and attaches hereto a copy of the order overruling the same." Petitioner also attaches to this petition affidavits of Guy H. Sigler, John L. Hodge, and H. B. Brumley, also a duly certified transcript of the shorthand notes taken by O. H. English, court reporter in the trial of said cause at Ardmore on the 9th day of June, 1925, which transcript reads as follows:

"By Mr. Brown (during his argument to the jury): A man asked me last night, after hearing this testimony, 'Well, what do you think now?' and then I said, 'What else do you expect?'

"By Mr. Culp (of counsel for defendant): Your honor, will you give us a bill on that?

"By the Court: I think it is legitimate, Mr. Culp. (Exception allowed.)

"By Mr. Brown (of counsel for state, during his argument): You remember what a certain juror said when he was being qualified as a juror in this case about people carrying guns, and you remember what the balance of the jurors said in this case.

"By Mr. Sigler (of counsel for defendant): We except to what a juror, or jurors, said in this case, if the court please, while the jury was being qualified.

"By the Court: Take the exceptions, Mr. Sigler, as this argument is proper in this case.

"By Mr. Culp (of counsel for defendant): May we take our exceptions to these remarks?

"By the Court: Yes; you may take your exception and leave him alone, too, and if you don't leave him alone, some of you will get fined. Proceed, Mr. Brown.

"By Mr. Hodge (of counsel for defendant): We except to the remarks of the court also.

"By the Court: Take your exceptions, and let Mr. Brown proceed with his speech.

"By Mr. Sigler (of counsel for defendant, out of hearing of the jury): Comes now the defendant and moves the court to instruct the jury to disregard these statements by the attorney, Mr. H. H. Brown, and instruct the jury there is no testimony to justify the same, and particularly the following: 'The men who have testified for the defendant in this case have testified for defendants in enough murder cases if all the men were killed at one time the blood would drown them.' And the defendant now makes this statement into the record, and desires to show why he did not make the objection at the time the words were uttered, as he attempted to make an objection to the speech, and the court at that time threatened to fine the defendant's counsel, in the presence of the jury, if they made another objection.

"By the Court: I think there is sufficient testimony in the case to support all the argument.

"By Mr. Dudley, County Attorney: He said some of these witnesses had testified in enough murder cases that the blood would drown them if they were all killed at one time, but not in cases in favor of this defendant—he did not say that.

"By Mr. Sigler (of counsel for defendant, out of the hearing of the jury): The defendant offers to prove his statements, and also to prove at this time the court refused to permit him to take his exceptions.

"By the Court (out of hearing of the jury): The court will not only fine you, but will also send some one to

jail, the next man that disturbs any one in their argument, the very next man. I am saying this for the record, and the jail is for the man that says anything or disturbs the next argument.

"By Mr. Sigler (of counsel for defendant): We except to the ruling of the court."

In response to the alternative writ respondent filed his answer, the material part of which is as follows:

"The court desires to dictate into the record a response to the motion to disqualify: This court admits that Pat Whitfield was tried before this court at another term of court or at another day of this term—no it was another term. The court denies that it was violently antagonistic, or antagonistic at all, to the rights of the defendant.

"As to that portion of the charge or motion which states that on one occasion Hon. George Culp, who was one of the attorneys for the defendant, made an objection to certain testimony, and that said judge overruled said objection, whereupon Culp attempted to dictate into the record the grounds of his objection, and the motion further states that the court became violently angry with said Culp in the presence of the jury, and threatened to fine him and send him to jail, the court has this to say: Mr. Culp did make some objections to the admissibility of the testimony, and the court, after hearing those objections, overruled them, whereupon Mr. Culp arose and in the presence of the jury tried to dictate his offer and tender of proof in a manner which only suggested to the court and which would lead any reasonable attorney to believe and to know, from court-room practice, that he merely intended to get the inadmissible testimony to the jury for their consideration. After two or three times of this sort of practice, the court did reprimand Mr. Culp. The court denies that he threatened to send Mr. Culp to jail, and the record will not so state, in the presence of the jury, or at any time.

"Relative to that portion of the motion which says that during said trial, when H. H. Brown was making an argument on behalf of the state and was quoting and arguing what a juror who had been disqualified had said on his

voir dire examination, that counsel for the defendant objected to this argument, whereupon the court reprimanded the counsel and threatened to send the counsel to jail for making an objection: This statement is a flat contradiction of the truth, and was known to be untrue by the pleader when he drew the pleading. Mr. H. H. Brown was making a statement to the jury, and counsel for the defendant kept objecting at every point and stage of his argument, until this court came to the conclusion that they were not objecting upon any reasonable grounds, but only to harass Mr. Brown in his argument. The court then did reprimand counsel, and had them to take their seats. Later on the jury was withdrawn and the court did use some remarks to counsel that he would not have used in the presence of the jury, requiring them to dictate their objections into the record and not to continuously harass counsel for the state when they were making their argument.

"Relative to that portion of the motion which says that the jury, after hearing this case for almost a week, retired to deliberate at 4:20 p. m.: That is about correct; and at 9 o'clock on the same evening the said judge asked counsel for the defendant to come to his chambers—by way of parenthesis I will say that counsel were in the chambers of the judge at about that time, but not upon the invitation of the court—whereupon he informed said counsel that the jury was hung; that he wanted to discharge the jury, and that he was going to sustain the motion for a change of venue in this case, and would do so on the following Monday morning. This is a flat contradiction of the truth in the case. The jury reported to this court in open court, in the presence of the defendant and in the presence of defendant's counsel, and in the presence of counsel for the state, that they were hung; whereupon this court asked the jury as to numbers—how they were hung —not as to whether they stood for acquittal or conviction, and without any warning from the jury whatsoever, the jury made the statement in open court, in the presence of the defendant, that 7 of them stood for acquittal, and 5 of them stood for conviction. Whereupon the defendant and his counsel and the state and its counsel—and the record will so show—in open court said that they were willing

that the jury should be discharged and to declare the case a mistrial. Mr. Sigler, of counsel for defendant, did that night try to get this court, in chambers, to promise him a change of venue. This court told Mr. Sigler at that time and has told him many times since that he did not think that a change of venue was warranted where the jury showed that 7 of them stood for acquittal, and 5 of them stood for conviction. However, the court has not had presented to him since the trial a formal motion asking for a change of venue, and the court is not now passing on that question. The court is now passing upon the question of whether the court is disqualified.

"Relative to that part of the charge or motion which says the defendant further shows to the court that after said trial the Honorable Asa E. Walden stated to counsel for the defendant that he realized that he had not been fair in the trial and could not give the defendant a fair and impartial trial: No such statement was ever made by this court to any member of counsel for the defendant, and was known by the pleader to have not been made at the time the pleading was drawn. Further, that the sight of the wife and child of the deceased almost ran him crazy; I never made any such statement as that. I did say to Mr. Sigler and I believe Mr. Culp that I had tried so many murder cases within the last 12 months that the sight of orphan children and widowed women did make the heart of this court bleed, and I say that again this morning, from the bench, and reiterate the fact, and I am proud that it does make my heart bleed to see the wives and children of slain men in court, but that does not disqualify this court from giving the defendant a fair and impartial trial. I would hate to get to the place where it did not make my heart bleed to see these orphan children. The court denies that it runs him crazy, as alleged by counsel for defendant, or that the court made any such statement to counsel for defendant.

"The other part of the motion, as to the Press report, Mr. Sigler has about corrected that statement. The court did, at the close of the examination of the jury, last spring, after the jury in the Whitfield Case had been selected and were out of the presence of the court—the court, in talking to a bunch of talesmen, probably 75 in number, many of

whom had disqualified in the case, and the court had come to the conclusion—had disqualified a great number of them—for business reasons, the court did give a lecture on jury service to those 75 men, calling their attention to the importance of jury service in this country, and did not directly charge that any of them had disqualified for business reasons, but the court did have the opinion that some of them had done so, and the court made this remark: That the man who would disqualify for jury service on account of business reasons was not giving to his state and to his country the full measure of devotion that he owed to it. The court made that sort of a statement to those jurors.

"In closing, the court wishes to state that at many times counsel for the defendant has sought to engage this court in private interview concerning this case, and Mr. Sigler is not the only party guilty. Mr. John L. Hodge, on numerous occasions, has told this court that he, at all times during the trial, did not seek to see that the defendant got a fair and impartial trial, but that he and counsel for the defendant sought to lead the court into reversible error. Mr. John L. Hodge made this statement to this court no later than last week, in the presence of other attorneys, in chambers at Marietta.

"This court knows that it can give this defendant a fair and impartial trial, and knows that it will give this defendant a fair and impartial trial; however, this court refuses to be run off of the bench by the statements of counsel which are untrue, and refuses for these reasons to disqualify in this case. You may have your exception, Mr. Sigler.

"I want to put another thing in that record before the defendant gets out. Relative to the statement of the defendant that the court would not grant the change of venue because it would ruin this court politically: The court never made any such statement as that, and it was known by counsel who drew the statement in the pleading that the court never made any such statement; I want that to go in, too."

It appears that the second trial of the defendant's case is set for Monday, September 14th.

The petitioner bases his right to the relief prayed for upon article 2, § 6, of the Bill of Rights, which in so far as applicable here, provides:

"Right and justice shall be administered without sale, denial, delay, or prejudice." Const. art. 2, § 6.

By this provision of the Consitution the people have prohibited a judge from trying a cause in which he is prejudiced by or for either party. In Ex parte Ellis, 3 Okla. Cr. 220, 105 P. 184, 25 L. R. A. (N. S.) 653, Ann. Cas. 1912A, 863, we said:

"The framers of our Constitution guarded with special care our judiciary and tried to place it above suspicion of unfairness, passion, or prejudice, so that public confidence in our courts would not be shaken, and provided that right and justice should be administered without prejudice. By virtue of this constitutional provision, who can doubt or question the absolute and unqualified right of the citizen when called to answer in a court of justice to demand that his trial shall be before an impartial judge and by impartial jurors? Any other doctrine would place the rights of the citizen which were intended to be protected by this constitutional provision at the mercy or control of the court or judge thereof."

Under the statute, section 2629, C. S. 1921, bias and prejudice of the presiding judge to such an extent that a fair and impartial trial cannot be had is sufficient cause to entitle the defendant to have a change in the judge. The statute further provides that the defendant may "file a written application with the clerk of the court, setting forth the grounds or facts upon which the claim is made that the judge is disqualified, and request said judge so to certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do within three days before said cause is set for trial, application may be made to the proper tribunal for mandamus requiring him so to do." Section 2633, C. S.

If the application is in compliance with the statute and the judge concedes that he is prejudiced, he certifies his disqualification as requested. If he refuses to admit his disqualification and therefore refuses to make the certificate, a petition may be filed for writ of mandamus to require him so to do, and the question of his disqualification will then be determined by this court upon the petition and the response thereto. The facts upon which the claim of prejudice is made must be set out in the original application so that the judge may know upon what the claim is based, and it is not sufficient to set those facts out for the first time in the petition for the writ.

Considering only the transcript of the proceedings had in the argument of counsel for the state on the defendant's first trial, together with the uncontroverted statement that the respondent had publicly declared petitioner to be guilty, and that he would be convicted and sent to the penitentiary, we are satisfied that petitioner is entitled to a change of judge.

The remarks of the prosecuting attorney were wholly improper, and the objections of counsel for the defendant should have been sustained. The remarks of the court in overruling said objections and in admonishing counsel for the defendant were wholly without justification. By numerous decisions of this court it is held that attorneys for a defendant are entitled to and must receive fair treatment at the hands of the trial court.

We may remark here that while an idle or thoughtless remark of the judge, made out of court concerning a case pending before him, is not sufficient cause to entitle the defendant to have a change of judge, yet the utmost care should be exercised by a trial judge, especially in a capital case, not to let fall any expression in or out of court as to the guilt or innocence of the defendant, or as to what he thinks of the defendant, his counsel, or his case.

For the reasons stated, we are of the opinion that the application for a change of judge should have been granted. Respondent having refused to disqualify, the writ of mandamus as prayed for is awarded.

BESSEY, P. J., and EDWARDS, J., concur.