BOSS FISK v. VENABLE, Judge.

No. A-9321.  May 17, 1937.
(68 Pac. [2d] 425.)

J. J. Smith, for petitioner.

William E. Poteet, Co. Atty., and Horace D. Payne, Asst. Co. Atty., for respondent.

DOYLE, J. This case is before us on petition for writ of mandamus to require John H. Venable, county judge, to disqualify from presiding in any further proceedings against petitioner in a case pending in the county court of Ottawa county, wherein petitioner is charged with the offense of unlawful possession of intoxicating liquor, and alleging that said county judge, respondent herein, is biased and prejudiced against petitioner to such an extent that he cannot have a fair and impartial trial on said charge in said court before respondent county judge, and that said county judge refused to certify his disqualification in the case and overruled petitioner's application therefor. The motion for change of judge was

verified by petitioner's oath and supported by oral testimony on the hearing. A copy of the motion, a partial transcript of the testimony taken upon the hearing, and the minutes of the court clerk are attached to and made a part of the petition.

On April 30, 1937, the case was heard and by agreement of counsel was submitted without briefs.

It appears from the record that said county judge issued a search warrant against a place of business known as the Shamrock Buffet, located on the corner of Central avenue and A Street S.W., or just across the street from the northwest corner of the courthouse square in the city of Miami, and against petitioner, an employee of said concern, and not against R. T. Walker, the proprietor of said place. That after the issuance of the search warrant and pursuant to said search there was filed in the district court of Ottawa county by the county attorney a petition wherein said county attorney seeks to close the said Shamrock Buffet and to abate the place as a public nuisance; that said action runs against the petitioner as well as against the owner of the place, that said action is now for trial in said district court, and said respondent has manifested his interest therein by attending said district court on April 15, 1937, when proceedings were had and heard with reference to said case; that after the case against petitioner was assigned for trial, counsel for petitioner agreed with the county attorney that the case might be continued over the term, and when said judge was notified thereof counsel for petitioner was given to understand that the case would be continued over the present term; that later petitioner learned that his case had not been continued over the term but had been reassigned for trial on April 21; that this was done without the knowledge or the consent of either petitioner or the county

attorney and against the express agreement to the contrary. Thereupon counsel for petitioner advised the court that said assignment conflicted with his engagements in the district court, and said judge told the county attorney and counsel for petitioner in substance that it was already being talked around by people that the case would never be tried, and that some one had said in a conversation with him that the case would never be tried, and thereupon said judge refused to continue said case over the term but reset the same for trial on May 3, 1937.

Among other matters and specifically charged is the one of the manner of selecting the jury. It appears that the jury panel for the term was supplemented by an order directed to the sheriff to summon additional jurors for the completion of the panel from the body of the county. It is alleged and not denied that only two or three other than members of said judge's Sunday school class, in sympathy with the prosecution, were selected. In other words, the motion alleges that said respondent on account of his bias and prejudice against petitioner would not afford or allow him a fair and impartial trial, and in pursuance of such purpose had taken such steps as would result in him being tried by a jury prejudiced against him, and selected for that purpose. That petitioner has filed in said county court a motion to suppress evidence obtained in executing the search warrant which is now pending.

That in the case of State v. Boydston, counsel presented a motion to suppress the evidence for the state, based upon the identical grounds in petitioner's motion, that upon conclusion of the arguments the court indicated that in his opinion that said motion was well taken, but upon being reminded that seven or eight cases hinged upon the same question, all of which cases were founded upon search warrants issued by said county judge, among which

was the petitioner's case, said motion to suppress was overruled. It was in evidence on the hearing of the motion that the court, in overruling the motion to suppress the evidence in the Boydston Case, stated that this court might overrule the Bishop Case as the Supreme Court of the United States had reversed itself. In his answer the respondent states:

"Nothing of this kind was said at the time, but afterwards Perry Porter came in when Bill Poteet and I were talking and made some statement about the Bishop case governing, and to his statement I told him I thought there was some difference, and then I jokingly stated in reply to a statement by him that that case was controlling, that the Criminal Court of Appeals might back up as the Supreme Court of the United States had done, these are the cold facts and the record distorted them in that particular."

It is also alleged that in the meantime the case of State v. Boydston was tried and the jury returned its verdict of guilty and fixed the maximum punishment, six months' confinement in the county jail and a fine of $500, that said judge in open court and in the presence of the jury panel commended such verdict and in substance stated that by such verdicts the officials of the county would be aided in the enforcement of the liquor laws. In the case following, State v. Riggs, a jury selected from the panel hearing the court's remarks and statements returned a verdict of guilty and fixed the maximum punishment; that said remarks of the court were manifestly prejudicial to a fair consideration of petitioner's case by the jury.

It is further alleged that said judge has shown an undue interest in the aforesaid injunction suit based upon matters arising out of the search warrant issued by said judge; that by reason of the fact that said judge each day

passed by and near said Shamrock Cafe, he should have as much general knowledge of the matters alleged in said petition for injunction as any other person and perhaps could and should be a material witness in said cause.

It appears from the record that the respondent made no response to the motion, except that orally in open court he stated that he did not have any bias or prejudice against the defendant. In this court the respondent appeared by counsel and made return without the service of an alternative writ of mandamus; thus the petition stands as and for the writ itself for the purpose of the case and the return, and it was stipulated that the case would be heard on oral argument and respondent's general denial.

It is due to respondent to say that following the submission of the case he filed a statement in this court.

The petitioner bases his right to the relief prayed for upon the provision of the Bill of Rights, which reads:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Const. art. 2, § 6.

By this provision of the Constitution the people have prohibited a judge from trying a cause in which he has prejudice in favor of one of the parties or against the other.

The procedure prescribed by the statute where a judge refuses to admit his disqualification in a criminal case is as follows:

"Any party to any cause pending in a court of record may in term time or in vacation file a written application with the clerk of the court, setting forth the grounds or

facts upon which the claim is made that the judge is disqualified, and request said judge so to certify, after reasonable notice to the other side, same to be presented to such judge, and upon his failure so to do within three days before said cause is set for trial, application may be made to the proper tribunal for mandamus requiring him so to do." Section 2915, St. 1931 (22 Okla. St. Ann. § 575).

If the application is in compliance with the statute and the judge concedes that he is disqualified, he certifies his disqualification as requested. If he refuses to admit his disqualification or fails to make the certificate, a petition may be filed for writ of mandamus to require him so to do, and the question of his disqualification will then be determined by this court upon the petition, the response thereto, and the proof. The facts upon which the claim of prejudice is made must be set out in the original application so that the judge may know upon what the claim is based, and it is not sufficient to set those facts out for the first time in the petition for the writ. McCullough v. Davis, Judge, 11 Okla. Cr. 431, 147 Pac. 779; Whitfield v. Walden, Judge, 31 Okla. Cr. 332, 239 Pac. 266.

The sole question presented in this proceeding is the sufficiency of the application and the proof in support of the same.

Questions of this nature are always unpleasant; they must first be addressed to the judge whom they affect. The anomoly is there presented of one sitting in judgment upon the trial of questions involving, if not his official integrity, certainly his official impartiality, and he is required to pass upon them. On his failure or refusal to disqualify in a criminal case, application may be made to this court for mandamus requiring him so to do. Brown v. State, 6 Okla. Cr. 442, 119 Pac. 447.

The first adjudicated case construing the foregoing provision of the Bill of Rights is the case of Ex parte Ellis, 3 Okla. Cr. 220, 225, 105 Pac. 184, 186, 25 L. R. A. (N.S.) 653, Ann. Cas. 1912A, 863. The court said:

"The framers of our Constitution guarded with special care our judiciary and tried to place it above suspicion of unfairness, passion, or prejudice, so that public confidence in our courts would not be shaken, and provided that right and justice should be administered without prejudice. By virtue of this constitutional provision, who can doubt or question the absolute and unqualified right of the citizen when called to answer in a court of justice to demand that his trial shall be before an impartial judge and by impartial jurors? Any other doctrine would place the rights of the citizen which were intended to be protected by this constitutional provision at the mercy or control of the court or judge thereof."

As was said in Ex parte Owens, 37 Okla. Cr. 118, 258 Pac. 758, 803:

"Under the declaration of article 2, § 6, Bill of Rights, that 'Right and justice shall be administered without sale, denial, delay, or prejudice,' as well as by the unwritten dictates of natural justice, the courts of this state are commanded to administer justice without prejudice."

In order to maintain and foster proper respect and confidence of the people in the courts, the courts must be presided over by unprejudiced, unbiased, impartial, and disinterested judges and all doubt and suspicion to the contrary must be jealously guarded against. McCullough v. Davis, Judge, 11 Okla. Cr. 431, 147 Pac. 779; Dennison v. Christopher, Judge, 19 Okla. Cr. 467, 200 Pac. 783; Whitfield v. Walden, Judge, 31 Okla. Cr. 332, 239 Pac. 266; State ex rel. Conley v. Parks, Judge, 32 Okla. Cr. 61, 239 Pac. 941; Ex parte Owens, 37 Okla. Cr. 118, 258 Pac. 758.

The Supreme Court of the state construes this section of our Constitution in the case of Shearer v. Linebaugh, Judge, 101 Okla. 291, 225 Pac. 686, 688.

The court, speaking through Justice Nicholson, says:

"While the respondent insists that he is not unfriendly to either of the petitioners, and that he can accord them a fair and impartial trial, and while we do not doubt his sincerity in this regard, yet the question is not so much whether he feels that he would be able to give the petitioners a fair and impartial trial, as whether his utterances and actions preclude reasonable men from feeling that a fair and impartial trial can be had before him, and that he is disinterested in the result.

"Section 6, art. 2, of the Constitution requires that 'right and justice shall be administered without sale, denial, delay, or prejudice.' The basic principle on which the law rests is that every litigant is entitled to have his rights determined by an impartial and disinterested tribunal, and one that has not prejudged his case. It matters not that a judge is honest, and that he actually believes he can give litigants a fair trial; if he has discussed the merits of a case, and has formed an opinion before a trial, he is bound to enter upon the trial more or less biased and prejudiced. This should not be. Judges should refrain from partisanship in cases pending before them, and should not permit the clamor of the public to warp their judgment. The judiciary is the safeguard of the nation and the state, and the members thereof should so conduct themselves as to inspire the confidence of all, so that every one will feel and know that in the courts their rights will be protected. This confidence cannot exist, if judges persist in discussing out of court the merits of cases pending before them and forming and expressing opinions thereon before a hearing in the orderly course of procedure, and where this has been done the judge should not, in justice to the litigant, insist upon being permitted to sit in the trial of his case."

In State ex rel. Warner et al. v. Fullerton, Judge, 76 Okla. 35, 183 Pac. 979, 980, Chief Justice Owen says:

"Courts should scrupulously maintain the right of every litigant to an impartial and disinterested tribunal for the determination of his rights. All are interested in the integrity, independence, and impartiality of the judiciary, the most important and powerful branch of our government. Judges presiding over the courts should be unbiased, impartial, and disinterested in the subject-matter in litigation, and it is of the utmost importance that all doubt or suspicion to the contrary be jealously guarded against, and, if possible, completely eliminated, to the end that we may maintain and give full force and effect to the high ideals and salutary safeguards written in the organic law of the state. State ex rel. Mayo v. Pitchford, 43 Okla. 105, 141 Pac. 433; Yazoo & M. V. R. Co. v. Kirk, 102 Miss. 41, 58 So. 710, 834, 42 L. R. A. (N.S.) 1172, Ann. Cas. 1914C, 968."

To like effect are Robertson v. Bozarth, 87 Okla. 102, 209 Pac. 742; Schulte v. Bolen, 90 Okla. 238, 216 Pac. 928; State v. Martin, 125 Okla. 24, 256 Pac. 681.

In the case of State ex rel. Conley v. Parks, 32 Okla. Cr. 61, 239 Pac. 941, 942, it is said:

"Prejudice is a state of mind which is ordinarily not capable of being proven by direct and positive evidence. It can generally be proven only by the circumstances, environment, association, relationship, and conduct of the person who entertains it. It is often not known to be held by the person entertaining such prejudice; that is to say, one may have a prejudiced state of mind upon a subject against an idea, cause or person, and be wholly unconscious that he had any prejudice. In fact upon casual thought, we are aware that many persons are prejudiced upon public questions, in matters of politics or religion, or on many other subjects, and by reason of such prejudice incapable of giving a dispassionate consideration to such question, and at the same time be totally unconscious that

he is prejudiced, and would be quick to repudiate a suggestion that his state of mind is other than fair and open."

The constitutional provision which guarantees to every person charged with crime a trial without "prejudice" in so far as it relates to the presiding judge does not include the opinion of the judge as to the guilt or innocence of the defendant; the prejudice contemplated means the presence of such a state of mind or feeling as might prevent him from giving the defendant a fair trial.

We do not think it is necessary that the application should allege facts which tend to show that the judge was intentionally unfair or that he would knowingly disregard the law or the evidence to the prejudice of the defendant. It may, however, sometimes happen that conditions or circumstances are such that a perfectly honest and competent judge would in fact be unable to afford a defendant such a fair and impartial trial as the law intends and requires.

Of course, it is important that the laws should be enforced and violations thereof punished, but it is still more important that, as far as possible, every person accused of an offense should have a fair trial before an impartial court or judge.

The question here submitted for our consideration is not whether petitioner is guilty or innocent of the offense charged. Petitioner may be guilty, but this does not furnish any excuse for the refusal of respondent to vacate the bench.

Upon careful examination of the record, it is our opinion that upon the undisputed facts the application for a change of judge in petitioner's case on account of the prejudice of the judge should have been granted.

Respondent having refused to disqualify, the writ of mandamus as prayed for is awarded.

DAVENPORT, P. J., and BAREFOOT, J., concur.