A. L. CASTLEBERRY v. JONES, Judge.

No. A-9806.    Feb. 3, 1940.
(99 P. 2d 174.)

Robert J. Bell, of McAlester, for petitioner.

Paul Gotcher, Co. Atty., of McAlester, for respondent.

DOYLE, P. J. The petition filed in this court January 26, 1940, omitting formal parts, reads as follows:

"1. That he stands charged by information filed on the 14th day of December, 1939, of the crime of illegal possession of intoxicating liquors, being case number 4948 in the County Court of Pittsburg County, Oklahoma, the court presided over by respondent. A true

and correct copy of said information so filed and so pending against this petitioner is hereto attached as Exhibit 'A' and made a part hereof.

"2. That on January 23, 1940, after due notice having first been served upon the County Attorney of Pittsburg County, Oklahoma, and service having been acknowledged thereof by said County Attorney, this petitioner filed his verified application under the laws of the State of Oklahoma for the disqualification of the presiding judge, and for a change of judge, alleging that the trial judge, Hon. Wm. Jones, was biased and prejudiced against him, he could not have a fair and impartial trial before said judge as provided by the Constitution and Statutes of the State of Oklahoma. A true and correct and duly certified copy of said application for disqualification so filed as aforesaid is hereto attached as Exhibit 'B' and made a part hereof; said petitioner being compelled to file a certified copy instead of the original because the Court Clerk of Pittsburg County, Oklahoma, refused to surrender the original for the purpose of this petition.

"3. That there was filed on behalf of the respondent by the County Attorney of Pittsburg County, Oklahoma, with the Court Clerk, a general denial of the matters and things set forth in said application for disqualification, a true and correct copy of same being hereto attached as Exhibit 'C' and made a part hereof.

"4. That said application for disqualification so filed as aforesaid came on for hearing before the respondent, Hon. Wm. Jones, by agreement of counsel on January 24, 1940, at which time the respondent, Hon. Wm. Jones, refused to certify his disqualification as requested by petitioner and refused to grant a change of judge. A full, true, correct and complete transcript of the proceedings had at said time, certified by Helen Gernert, County Court Reporter, and bearing the seal of the County Court of Pittsburg County, Oklahoma, is hereto attached as Exhibit 'D' and made a part hereof.

"5. That in the cause now pending against petitioner, there is filed a motion by said petitioner to suppress the testimony of the State alleging that the evidence against this petitioner was obtained by means of an illegal search and seizure of his home and residence and the respondent herein has prejudged the law involved in said hearing and is disqualified to act thereon as well as to try the issues of fact in a jury trial; that unless a temporary restraining order is issued by this Court against his Honor, Wm. Jones, County Judge, petitioner verily believes that respondent will set his case for trial and will pass upon the motion to suppress the evidence.

"6. Petitioner further states that for a long period of time the Honorable Wm. Jones, County Judge, has entertained a violent personal dislike and prejudice towards this petitioner which has been expressed on many occasions; that in the month of July, 1938, while the said Honorable Wm. Jones was a candidate for re-election as County Judge, he, the County Judge, communicated with W. O. Merrill, the then qualified and acting undersheriff of Pittsburg County, Oklahoma, and demanded that the said Merrill go to the home of this petitioner and raid the same; whereupon the said Merrill requested that a search warrant therefor be issued as his authority for entering said premises; whereupon the County Judge, Wm. Jones, stated that no search warrant was necessary as everybody knew the petitioner, A. L. Castleberry, to be a bootlegger and on which occasion violent language was used by the County Judge towards this petitioner; that on at least one other occasion, said County Judge in conversation with said Merrill expressed strong dislike and prejudice towards this petitioner and his dislike of this petitioner because this petitioner was not supportng him for re-election.

"7. That shortly after the primary election, being on the day that the Industrial Commission was meeting in the County Court Room, the Honorable Wm. Jones, County Judge, flew into a rage concerning this petitioner, stating that he was a bootlegger and using other vile language towards this petitioner and that he, the said

County Judge, was going to see that the petitioner was driven out of the County and see that he was caught for selling liquor and threatening to call public gatherings wherein he, the County Judge, would enlist the aid of certain Ministers of the Gospel and openly condemn this petitioner; that said conversation took place in the presence of the attorney for this petitioner, Walter Haggard, the sheriff-elect, of Celest O'Bannon, court reporter of the County Court, of Pat Jones and Denver Jones, both brothers of Honorable Wm. Jones, County Judge, and other parties to this affiant unknown at this time; that on said occasion the Honorable Wm. Jones addressed the attorney for this affiant and instructed said attorney to inform this affiant of his attitude, which was done by said attorney.

"8. Affiant further states that the affidavit for search warrant and search warrant in this case were drawn by the court reporter of the County Court without consultation with the County Attorney's office and states upon information and belief that the County Judge Wm. Jones helped in the preparation of said papers and the passing upon the validity of said search warrant and affidavit for search warrant, said County Judge would be in effect construing the legality of his own acts.

"9. Affiant further states that on numerous occasions the Honorable Wm. Jones, County Judge, in passing upon motion to suppress search warrants in similar cases, has admitted the invalidity of the search warrants, and he has admitted the validity of the motions to quash the same on the basis of present holding of the Criminal Court of Appeals of the State of Oklahoma; but has stated in said instances that he refused to follow the rulings of the Criminal Court of Appeals and would force the defendants to trial and put the issues squarely before the public by forcing the Criminal Court of Appeals, if they wished, to reverse said cases, assigning various reasons as to why he would not follow the decisions of the Court.

"10. That one of said occasions was at the last term of County Court in the case of State of Oklahoma against Tom Lenora, being cause No. 4903, wherein attorney for said defendant was the Honorable F. D. McSherry of McAlester, Oklahoma; that in this case said County Judge stated that the search warrant was bad under the rulings of the Criminal Court of Appeals but nevertheless he was overruling the same; that he, the said County Judge had rather stay with the officers than the bootleggers; that the Criminal Court of Appeals might reverse their rulings as the Supreme Court had done; that he, the said County Judge, would not be bound by the rulings of the Criminal Court of Appeals on questions of search and seizure and that in cases where a search warrant was obtained, the defendants would just have to face a jury.

"11. Petitioner further shows the Court that he has interviewed witnesses Walter Haggard, now the sheriff of Pittsburg County, Oklahoma, and Celest O'Bannon, formerly Court Reporter of the County Court but now City Clerk of McAlester, Oklahoma, and they have all stated that they recall the incidents referred to in this petition but prefer not to give affidavits and not to testify unless and until they are duly served with a subpoena therefor; that this Court should appoint some suitable person to hear said testimony and transmit the same to this Court.

"Wherefore, your petitioner prays that an alternative writ of mandamus be issued out of this Court commanding the respondent to show cause why he should not disqualify himself; and upon failure to show cause, that a temporary writ of mandamus issue, and if answer is filed by said respondent, that upon the hearing of the same that a peremptory writ of mandamus issue, commanding said respondent to disqualify himself to try said cause; that some suitable person be named to hear the testimony herein; and that pending the disposition of this issue, that said respondent be restrained and prohibited from further proceeding with this cause."

On the day the petition was filed, respondent, Wm. Jones, judge, filed his response thereto, the material part of which reads as follows:

"1. That the Petitioner is now charged in the County Court of Pittsburg County with the crime of possession of intoxicating liquor and that there is a Motion filed by said Petitioner to Suppress the Evidence obtained by the Sheriff of Pittsburg County and to Quash the Search Warrant which was issued in said cause.

"2. Your Respondent would further respectfully show this Court that he is not disqualified to act as trial judge in said cause and that he is not biased or prejudiced against the Petitioner herein. Your Respondent would further show that he has never entertained a violent personal dislike against the Petitioner herein and that in July 1938 your Respondent denies that he demanded that W. O. Merrill, the then Undersheriff of Pittsburg County, to go to the home of this Petitioner and raid same; and he further denies that Merrill ever requested that a search warrant be issued and he further denies that he intimated or accused the petitioner herein of being a bootlegger or that he ever used violent language at that time toward said Petitioner.

"3. Your Respondent would further show to the Court that shortly after the Primary Election 1938 in the County Court room in the presence of Bob Bell, attorney of record for the Petitioner herein, and others who were near and about there, that your Respondent did make a statement concerning said Petitioner and that in substance he said the following: 'That he (the defendant) was a damn fool to have spent money in an attempt to have defeated me because as a private citizen I could get the ministers back of me and perhaps call a mass meeting and stir up public sentiment to such an extent that he (the Petitioner) would have to leave the county or quit his illicit business but as a Judge I cannot do things which would reflect on the Court.' Your Respondent denies that he flew into a rage or that he used any untoward language concerning this Petitioner;

your Respondent would show to the Court that this happened immediately after a Democratic Election and the high blood pressure of the campaign had not been relieved and but for the questionable practices during the election on the part of the Petitioner your Respondent would probably have never even noticed him.

"4. Your Respondent would further show to the Court that he as County Judge did not aid in the preparation of the Affidavit for the search warrant used in case No. 4948 Pittsburg County, criminal, but did issue the warrant after the Affidavit for same was presented to him in his judicial capacity.

"5. Your Respondent would further show to the Court that he has never willfully nor deliberately refused to follow the decisions of the Criminal Court of Appeals but that in some instances in causes pending before him on Motion to Suppress the Evidence and Quash the Search Warrant that your Respondent did not place the same interpretation that the lawyers for the various defendants placed on the decisions so read to the Court, and thereby your Respondent overruled said Motions, thereby permitting a jury of Pittsburg County to pass upon the guilt or innocence of the various defendants and especially would your Respondent deny that in cause No. 4903 County Court of Pittsburg County, criminal, that your Respondent said either in words or substance that he would not be bound by the rulings of the Criminal Court of Appeals on the question of searches and seizures. Your Respondent would respectfully show to the Court that during the hearing in said cause No. 4903 he made some remarks concerning decisions of the Criminal Court of Appeals not in a derogatory or contemptuous manner but merely pointing out the trend of decisions from statehood up until the present day and remarking further the possibility of there being in the future a more liberal construction placed upon the search and seizure law by this Honorable Court.

"6. Your Respondent would further show to the Court that he has never expressed his opinion as to the merits of the Motion to Suppress the Evidence and Quash

the Search Warrant which has been filed by Petitioner in cause No. 4948, County Court of Pittsburg County, criminal, and neither has he ever expressed or formed an opinion as to the innocence or guilt of the defendant in said cause and for the reasons hereinbefore stated your Respondent respectfully shows the Court that he has not prejudged the case in any manner and is not disqualified to hear said cause in the County Court of Pittsburg County, Oklahoma.

"7. Your Respondent would further show to this Honorable Court that heretofore on the 7 day of February, 1938, the Petitioner herein was charged with the possession of intoxicating liquor with the intent to violate the Law, Case No. 4792, County Court, Pittsburg County, criminal, and at that time your Respondent was Trial Judge in said cause. The evidence was fairly submitted and your Respondent instructed the jury as to the Law and thereafter the jury returned a verdict of not guilty in said cause, thereby discharging the Petitioner herein, and that as a result of said trial the Petitioner herein entertained and has had a violent personal dislike for your Respondent and began what was and is known as 'a bitter personal political enemy' and the Petitioner herein attempted to defeat your Respondent in the Democratic Primary Election of 1938 by the use of every device known to political chicanery. And your Respondent believes and he verily avers that he is not prejudiced toward this Petitioner herein but believes that the Petitioner is prejudiced against Respondent because of the acts and things done by said Petitioner toward and against your Respondent."

It appears from the record that respondent in answer to the original application in the court below filed a general denial and entered the following order:

"I have read the 'Application for Disqualification'. Part of the facts in the application are entirely untrue and part of the statements contained therein do not contain full and complete statements made at the time, the entire statements would show no prejudice toward the

defendant. It is my opinion that I can fairly present the law to a jury and fairly pass upon any legal question.

"Therefore, I deny the 'Application for Disqualification.'"

The procedure prescribed by the statute where a judge refuses to admit and to so certify his disqualification in a criminal case was in conformity with the statute. Code of Criminal Procedure, sec. 2915, 22 Okla. St. Ann. § 575; Brown v. State, 6 Okla. Cr. 442, 119 P. 447.

The petitioner bases his right to the relief prayed for upon the provision of the Bill of Rights, which declares that right and justice shall be administered without sale, denial, delay or prejudice. Const. art. 2, § 6, Okla. St. Ann.

By this constitutional provision the people have prohibited a judge from trying a cause in which he has prejudice in favor of one of the parties or against the other, and a defendant in a criminal action has the right to a change of judge when the presiding judge is in fact prejudiced against him, and under the constitutional provision this right cannot be abrogated.

The question presented in this proceeding for our determination is: Do the allegations of the petition and the admissions in the response thereto disclose that respondent herein entertains bias or prejudice which would disqualify him as presiding judge in the trial of petitioner?

Questions of this nature are always unpleasant; they must first be addressed to the judge whom they affect. The anomaly is there presented of one sitting in judgment upon the trial of questions involving, if not his

official integrity, certainly his official impartiality, and he is required to pass upon them.

The first adjudicated case construing the foregoing provision of the Bill of Rights is the case of Ex parte Ellis, 3 Okla. Cr. 220, 225, 105 P. 184, 186, 25 L.R.A., N.S., 653, Ann. Cas. 1912A, 863. The court said:

"The framers of our Constitution guarded with special care our judiciary and tried to place it above suspicion of unfairness, passion, or prejudice, so that public confidence in our courts would not be shaken, and provided that right and justice should be administered without prejudice. By virtue of this constitutional provision, who can doubt or question the absolute and unqualified right of the citizen when called to answer in a court of justice to demand that his trial shall be before an impartial judge and by impartial jurors? Any other doctrine would place the rights of the citizen which were intended to be protected by this constitutional provision at the mercy or control of the court or judge thereof."

As was said in Ex parte Owens, 37 Okla. Cr. 118, 258 P. 758, 803:

"Under the declaration of article 2, § 6, Bill of Rights, that 'Right and justice shall be administered without sale, denial, delay, or prejudice,' as well as by the unwritten dictates of natural justice, the courts of this state are commanded to administer justice without prejudice."

In order to maintain and foster proper respect and confidence of the people in the courts, the courts must be presided over by unprejudiced, unbiased, impartial, and disinterested judges and all doubt and suspicion to the contrary must be jealously guarded against. McCullough v. Davis, Judge, 11 Okla. Cr. 431, 147 P. 779; Dennison v. Christopher, Judge, 19 Okla. Cr. 467, 200 P. 783; Whitfield v. Walden, Judge, 31 Okla. Cr. 332, 239 P. 266; State ex rel. Conley v. Parks, Judge, 32 Okla.

Cr. 61, 239 P. 941; Ex parte Owens, 37 Okla. Cr. 118, 258 P. 758; Fisk v. Venable, Judge, 61 Okla. Cr. 360, 68 P. 2d 425, 430. In the latter case it was said:

"The constitutional provision which guarantees to every person charged with crime a trial without 'prejudice' in so far as it relates to the presiding judge does not include the opinion of the judge as to the guilt or innocence of the defendant; the prejudice contemplated means the presence of such a state of mind or feeling as might prevent him from giving the defendant a fair trial. * * *

"Of course, it is important that the laws should be enforced and violations thereof punished, but it is still more important that, as far as possible, every person accused of an offense should have a fair trial before an impartial court or judge."

In the case of State ex rel. Conley v. Parks, supra, it was said [32 Okla. Cr. 61, 239 P. 942]:

"Prejudice is a state of mind which is ordinarily not capable of being proven by direct and positive evidence. It can generally be proven only by the circumstances, environment, association, relationship, and conduct of the person who entertains it. It is often not known to be held by the person entertaining such prejudice; that is to say, one may have a prejudiced state of mind upon a subject, against an idea, cause or person, and be wholly unconscious that he had any prejudice. In fact, upon casual thought, we are aware that many persons are prejudiced upon public questions, in matters of politics or religion, or on many other subjects, and' by reason of such prejudice incapable of giving a dispassionate consideration to such question, and at the same time be totally unconscious that he is prejudiced, and would be quick to repudiate a suggestion that his state of mind is other than fair and open."

In Dennison v. Christopher, supra, it was said [19 Okla. Cr. 467, 200 P. 784]:

"Moreover, the state has an interest in the standing, integrity, and reputation of its courts, and, when constitutional or statutory provisions forbid a judge from acting officially, his action is regarded as transgressing the public policy of the state. Such prohibitions are plainly intended, not only for the benefit of the parties to a suit, but for the general interests of society, by preserving the purity and impartiality of the courts and fostering the respect and confidence of the people for their decisions. 15 R.C.L. 530.

"We are not unmindful of the fact that the practice of disqualifying trial judges on the grounds of bias or prejudice may be subject to much abuse. Captious and unwarranted accusations of bias should be discouraged. On the other hand, much of the adverse criticism against the courts of this state may be traced to the interest, real or apparent, shown by trial judges either in the subject-matter of the suit or the ultimate judgment to be rendered in particular cases. And in order to foster confidence in the integrity and impartiality of courts, a presiding judge should be compelled to certify his disqualification where it appears probable that such judge would not afford the defendant a fair trial."

Under the Constitution and laws of this state, a judge who cannot administer justice in a case without prejudice must not try the case. Under the statute the procedure for ascertaining the prejudice of a judge does not leave the fact of existence or nonexistence of prejudice entirely to his own conscience.

In his answer respondent admits:

"That shortly after the primary election 1938 in the county courtroom in the presence of Bob Bell, attorney of record for the petitioner herein, and others who were near and about there, that your respondent did make a statement concerning said petitioner and that in substance he said the following:

" 'That he (the defendant) was a damn fool to have spent money in an attempt to have defeated me because as a private citizen I could get the ministers back of me and perhaps call a mass meeting and stir up public sentiment to such an extent that he (the petitioner ) would have to leave the county or quit his illicit business, but as a judge I cannot do things which would reflect on the court."

Respondent further states:

"The petitioner herein entertained and has had a violent personal dislike for your respondent and began what was and is known as 'a bitter personal political enemy,' and the petitioner herein attempted to defeat your respondent in the Democratic primary election of 1938 by the use of every device known to political chicanery."

We conclude that the foregoing admitted facts alone clearly show that respondent, county judge, had conceived and entertained a feeling of bias and prejudice against petitioner that would prevent his affording him a fair and impartial trial.

We are therefore of the opinion that the undisputed facts are sufficient to have required the judge to certify his disqualification.

Respondent, county judge, having refused to disqualify, the writ of mandamus as prayed for is awarded.

BAREFOOT and JONES, JJ., concur.