*Ex parte* GEORGE L. ELLIS.

No. A-434.   Opinion Filed November 27, 1909.

(105 Pac. 184.)

1.   CONSTITUTIONAL LAW—Right to Justice. Under the declaration of article 2, sec. 6, Bill of Rights, that "Right and justice shall be administered without sale, denial, delay, or prejudice," as well as by the unwritten dictates of natural justice, the courts of this state are commanded to administer justice without prejudice.

2.   CONSTITUTIONAL LAW—Right to Justice—Prejudice of Judge. Section 8, art. 1, c. 27, p. 285, Sess. Laws 1908, provides among other grounds that "no judge of the county court shall sit in any cause or proceeding pending. after any party thereto has filed an affidavit in writing, corroborated by two credible

persons residing in the county, stating that affiant has good reasons to believe and does believe that the judge is so prejudiced against him that he can not have a fair and impartial trial if such judge continues to preside in such cause." Held, that this provision does not abridge the constitutional guaranty.

3. **PERJURY—Change of Judge—Affidavit of Prejudice.** Perjury or subornation of perjury cannot be assigned upon an affidavit of prejudice, made to secure a change of judge on the ground of prejudice.

4. **JUDGES—Affidavit of Prejudice.** Public confidence in our judicial system and courts of justice demands that causes be tried by unprejudiced and unbiased judges, and a denial of a change of judge, applied for on the ground of prejudice, will be presumed to be a denial of justice.

(Syllabus by the Court.)

Application of George L. Ellis for a writ of *habeas corpus.* Writ allowed.

This is an application to this court, filed November 16, 1909, for a writ of *habeas corpus,* to relieve the petitioner, George L. Ellis, from the custody of T. M. Latham, sheriff of Texas county. The petition sets out with particularity proceedings in the county court of Texas county wherein petitioner was committed to the county jail to await the action of the district court of Texas county on a charge of perjury, and also in the case of the State v. G. L. Ellis and Henry McCann, before W. H. Castleberry, a justice of the peace in and for Hooker township, Texas county, and further avers in substance: That in an action pending before the county court of Texas county, sitting at Hooker, entitled, "J. H. Morris, Plaintiff, v. R. H. Mathews, Defendant," said defendant made application on November 10, 1909, for change of judge, by filing affidavits as prescribed by section 8, art. 1, c. 27, p. 285, Sess. Laws 1908, wherein it is provided that:

"No judge of the county court shall sit in any cause or proceeding pending, after a party thereto has filed an affidavit in writing, corroborated by two credible person residing in the county, stating that affiant has good reason to believe, and does believe, that the judge is so prejudiced against him that he cannot have a fair and impartial trial, if such judge continues to preside in such case."

That said petitioner, together with Henry McCann, were the corroborating affiants. That on the said 10th day of November R. L. Davis, county judge, filed a complaint before W. H. Castleberry, a justice of the peace in and for Hooker township, Texas county, wherein he charged petitioner with the crime of perjury in making said corroborating affidavit of prejudice for change of judge. That petitioner was immediately arrested and taken before said justice of the peace. That there were present W. G. Hughes, county attorney, R. L. Davis, county judge, and Miss Flora Thompson, clerk of the county court of Texas county. That William M. Clark as counsel for petitioner filed an affidavit for change of venue on his behalf, whereupon W. G. Hughes, county attorney, dismissed said case. Immediately after the dismissal of said case, petitioner was rearrested by the sheriff of Texas county by virtue of a purported warrant issued by R. L. Davis, county judge, which warrant is as follows:

"State of Oklahoma, Texas County. In County Court. The State of Oklahoma, to the Sheriff of Said County: Whereas it appears probable in said court, that G. L. Ellis and Henry McCann have committed perjury in a proceeding pending in said court, you are therefore commanded to arrest said G. L. Ellis and Henry McCann and have them before the said court at ten o'clock a. m. Nov. 11, 1909, at the county court room at Hooker, Oklahoma, to be dealt with according to law, and have you then and there this writ. Witness my hand and the seal of said court at Hooker, Okla., this Nov. 10, 1909. R. L. Davis, Judge of the County Court. [Seal.]"

That at the time said warrant was served petitioner had not made oath or given evidence in any cause pending in the county court of Texas county other than said corroborating affidavit, and that no complaint has ever been filed in said county court charging petitioner with any offense against the laws of Oklahoma, and that on the 11th day of November, 1909, the said R. L. Davis, county judge in open court, did order that petitioner be held to the district court of Texas county to answer to the charge of having on the 9th day of November committed the crime of perjury in Texas county in making the aforesaid corroborating affi-

davit of prejudice for change of judge, which commitment is as follows:

"State of Oklahoma, Texas County. In County Court. The State of Oklahoma to the Sheriff of Said County: Whereas it appears to the satisfaction of the court that in a judicial proceeding pending in said court G. L. Ellis and Henry McCann have testified, and in so testifying have committed perjury, and the said G. L. Ellis and Henry McCann having by order of said court been required to give bond for their appearance in the district court of said county at its next term to be held at Guymon, and the amount of said bond fixed in the sum of $750.00 each and the said parties having failed to make such bonds: Now, therefore, you are commanded to take said G. L. Ellis and Henry McCann into your custody until such bond is given. When the said parties shall enter into recognizance with two sufficient sureties each for their appearance as aforesaid you will approve the same and discharge each of them, but, in the default of said bonds, you will confine the said G. L. Ellis and Henry McCann in the county jail of Texas county until such bonds shall be executed and approved. You will return this writ to the said district court. Witness my hand and the seal of said court at Hooker, Oklahoma, this Nov. 11, 1909. R. L. Davis, Judge of the County Court. [Seal.]"

There was also filed a stipulation waving the appearance and return of respondent, and consenting that the court pass upon the legality of the restraint on the facts set out in the petition, and on behalf of respondent admitting as true all the allegations, matters, and things set up in the petition of the said George L. Ellis, signed by, "L. M. Latham, Sheriff of Texas County, Oklahoma. Wallace G. Hughes, County Attorney for Texas County, Okla."

Upon filing this application respondent was directed to release petitioner upon his own recognizance pending the decision of the court.

*John L. Gleason* and *William M. Clark,* for petitioner.

*Charles L. Moore,* Asst. Atty. Gen., and *Wallace G. Hughes,* County Atty., for respondent.

DOYLE, JUDGE, (after stating the facts as above). The petitioner complains upon the facts stated that he is restrained of his liberty "without due process of law." It is apparent that the

county court in issuing said warrant and commitment proceeded under section 2083, Wilson's Rev. & Ann. St. 1903, which provides:

"Whenever it appears probable in any court of record that any person who has testified in any action or proceeding in such court has committed perjury, such court must immediately commit such person by an order or process for that purpose to prison or take a recognizance with sureties for his appearance and answering to an indictment for perjury."

The first question is: Has a court of record of this state under this provision authority to summarily commit a witness to be held to answer for perjury. We are of opinion that this provision of the laws of Oklahoma Territory, if not repugnant to the Constitution and in conflict with that part of section 17, art. 2, Bill of Rights, which provides, "No person shall be prosecuted for a felony without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination," can only be effective while a grand jury is in session in the county. To be effective in the case at bar would make the court the judge of his own case and would violate the maxim, "Nemo debet esse judex in propria sua causa"—"No man can be a judge in his own case." The maxim is as old as the law itself. "While prosecutions for felonies may be by indictment or information, as they are concurrent remedies," said this court in Re McNaught, 1 Okla. Cr. 528, 99 Pac. 241, "we are fully satisfied that the framers of our Constitution intended to abolish the grand jury system, except that it might be invoked for these special purposes, such as the investigation of public officers, the failure of public prosecutors to do their duty, and those peculiar conditions of public disorder which sometimes arise and make prosecutions by information impracticable." For this reason, upon the facts stated, the county court was without authority to issue the commitment.

It only remains to consider whether perjury can be assigned upon an affidavit "that affiant has good reason to believe and does believe that a judge is prejudiced." In general, any material statement made under oath in any proceeding, or in relation to

any matter in which oath is authorized, or required by law, may be the subject of perjury, or subornation of perjury, but the statement must be a statement of fact. Perjury cannot ordinarily be assigned upon a statement of a matter of opinion merely, or calling for the exercise of judgment. It is an entirely different proposition to say that perjury may be assigned upon an affidavit for a change of venue or judge, and that the court may summarily commit an affiant to be held to answer for perjury because it appears to the court that the affidavit for a change is false and untrue. In such a case we must examine the Constitution itself, and see whether this process be in conflict with any of its provisions.

The Constitution provides (section 6, art. 2, Bill of Rights) :

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay or prejudice."

The framers of our Constitution guarded with special care our judiciary and tried to place it above suspicion of unfairness, passion, or prejudice, so that public confidence in our courts would not be shaken, and provided that right and justice should be administered without prejudice. By virtue of this constitutional provision, who can doubt or question the absolute and unqualified right of the citizen when called to answer in a court of justice to demand that his trial shall be before an impartial judge and by impartial jurors? Any other doctrine would place the rights of the citizen which were intended to be protected by this constitutional provision at the mercy or control of the court or judge thereof. If, however, it be held that perjury can be assigned upon an affidavit for a change of judge, and that the affiant may be held to answer to a charge of perjury by reason thereof, the right to a fair and impartial trial, which the Constitution guarantees to every citizen, in reality no longer exists.

In the case of *Day v. Day,* 12 Idaho, 556, 86 Pac. 531, a similar constitutional provision was construed. The appellant made application for a change of venue upon the ground that she could

3 Cr.—15

not have a fair and impartial trial before the presiding judge by reason of his prejudice in the matter. The application was denied. In reviewing this action of the trial court, Justice Sullivan, in part, says:

"It is contended by counsel for appellant that under the provisions of section 18, art. 1, of the Constitution of Idaho 'the people have prohibited a court from trying a case in which he is prejudiced by or for either party.' Said section is as follows: 'Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay or prejudice.' They also cite paragraph 40 of the Magna Charta, which reads: 'To none will we sell; to none will we deny or delay right or justice.' They contend through that constitutional provision that the people have declared that justice shall be administered, not only without sale, without denial, and without delay, but also without prejudice, and contend that the legislative power to pass laws regulating the change of venue is limited by constitutional provisions respecting the subject. It is contended that said section of the Constitution is self-acting, self-executing, and requires no legislative provision for its enforcement, and cannot be abridged or modified by any legislative or judicial act. There is no question but what said provision is self-operating, and it is regarded as settled in this country that all negative or prohibitive clauses in a constitution are self-executing. The Legislature, neither by neglect to act nor by legislation, can nullify a mandatory provision of the Constitution, * * * for it cannot be maintained that a judge who is biased or prejudiced in a case on trial before him can administer justice without prejudice. Disregarding said provision of the Constitution, the ordinary principles of right and justice prohibit or disqualify a judge from trying a case in which he is prejudiced for or against either of the parties to the suit. This provision of the Constitution cannot be brushed aside by saying that it is a mere maxim of the law and means nothing; for the principle therein expressed is one of the foundation stones of our judicial system and jurisprudence, and could not be removed without shattering the entire system."

After reviewing the authorities pro and con, the learned justice concludes as follows:

"In the light of the judicial history of California and Mon-

tana in holding that the bias and prejudice of a judge was no ground for a change of venue, it is now recognized by those states that it ought to have been a ground, that it is a matter conducive to a just and proper administration of justice. The Constitution of Montana (section 6, art. 3) is as follows: 'The courts of justice shall be open to every person, and a speedy remedy afforded for any injury of person, property, or character, and that right and justice shall be administered without sale, denial, or delay.' The main difference between that section and section 18, art. 1, of the Constitution of Idaho, is that in the latter we find the word 'prejudice' after the word 'delay,' and provides that justice shall be administered without sale, denial, delay, or prejudice; that being a clear distinction and difference between the two Constitutions. It is a primary idea in the administration of justice that a judge must not decide judicial matters from bias, prejudice, and partiality, and our Constitution clearly prohibits a judge who has bias or prejudice in a case from trying it. The aim and object of the framers of the Constitution was to preserve judicial tribunals from discredit, and the Supreme Court of Montana, referring to this matter in *Stockwell v. Township Board of White Lake,* 22 Mich. 341, said: 'The court ought not to be astute to discover refined and subtle distinctions to save a case from the operation of the maxim, when the principle it embodies bespeaks the propriety of its application. The immediate rights of the litigants are not the only objects of the rule. A sound public policy which is interested in preserving every tribunal appointed by law from discredit imperiously demands its observance.' Can it be contended in the face of the command of said provision of our Constitution that the Legislature could legally declare that the bias and prejudice of a judge should be no cause for a change of venue? I think not. And if, in the face of that provision, the Legislature neglects to specify in a statute that the prejudice of the judge is a ground for a change of the place of trial, then the very object and purpose of that provision of the Constitution may be nullified and set at naught. Regardless of the statutory provision, where such a state of facts appear, as in the case at bar, and a change of place of trial is demanded because of the prejudice of a judge, a change of venue, or at least a change of judges, should be granted to preserve from discredit the judiciary of the state. No technical refinement or argument can convince the people that a prejudiced judge can fairly try a case between his friend and his foe. Such a thing might occur, but the general public would

not look upon such a trial as an administration of justice without prejudice. The statute provides the manner of procedure by which a change of venue may be had, and the procedure there provided is a proper procedure in a case where the application is made on the ground of the prejudice of the judge."

The Idaho Supreme Court in this case in substance held that, under this constitutional provision, a denial of a change of venue applied for on the ground of prejudice will be presumed to be in effect a denial of justice. The decision is logically and learnedly reasoned to this inevitable conclusion, and the doctrine declared meets with our unqualified approval.

From this proposition flows the corollary that this constitutional guaranty cannot be destroyed, denied, abridged, or impaired by legislative enactments, prescribing the procedure or providing that perjury may be assigned upon affidavits for a change of venue or judge. To what purpose would be the right if the party asserting it, or his corroborating witnesses, thereby subject themselves to a criminal prosecution? The provision of the statute for change of judge in county courts is in harmony with the constitutional provision. It is not an essential requirement that the judge should be as a matter of fact prejudiced. It only requires that the affidavit of the party and two corroborating witnesses set forth that he has good reason to believe, and does believe, that the judge is so prejudiced against him that he cannot have a fair and impartial trial if such judge continues to preside in such cause. It does not provide for further affidavit or other evidence to be heard. When these affidavits are presented to the court they stand uncontradicted, and the only means by which the court can dispute the alleged prejudice would be to use his personal knowledge. In the language of Justice Brewer: "All experience teaches that usually he who is prejudiced against another is unconscious of it, or unwilling to admit it." This statute is clearly not restrictive of, and does not impair, the constitutional guaranty.

We are of opinion that petitioner is deprived of his liberty without "due process of law," as no complaint properly verified

was filed and no evidence adduced showing probable cause. The county court had no jurisdiction to issue the warrant or commitment, and the proceeding had before said county court was in violation of petitioner's constitutional rights, as set forth in article 2, §§ 6, 7, 17, of the Bill of Rights. The length to which this opinion has been drawn can only be excused by a consideration of the importance of the principles involved and the necessity there seems to be for a clear understanding of the constitutional guaranty "that right and justice shall be administered without prejudice."

For the reasons stated, the writ is allowed, and the petitioner is discharged.

FURMAN, Presiding Judge, and OWEN, Judge, concur.