SAM INGRAM et al. v. WORTEN, Judge.

No. A-6919.  Opinion Filed April 3, 1928.
(266 Pac. 488.)

Leahy, MacDonald, Maxey & Files, Wilson & Duncan, and L. A. Justus, Jr., for petitioners.

Edwin Dabney, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and C. K. Templeton, Co. Atty., for respondent.

PER CURIAM.  Petitioners have filed in this court

their verified petition for mandamus, which, omitting formal parts, reads as follows:

"Comes now the relators, Sam Ingram, Harry Buzan, and R. A. Correll, and respectively show to this court as follows:

"(1) That the defendant, Hon. Jesse J. Worten, is the regularly qualified and acting judge of the district court of the Twenty-Fourth judicial district of the state of Oklahoma, which district is composed of the county of Osage, and which district court is held in the city of Pawhuska, the county seat of Osage county, Okla. That heretofore, to wit, on the 17th day of December 1927, an information was duly and regularly filed in said district court of Osage county, Oklahoma, by the county attorney of said county, charging that these relators, on the 6th day of June, 1923, entered into a conspiracy to get and obtain, knowingly and designedly, by false pretenses, from Osage county, Oklahoma, the sum of $47,288.97 good and lawful money of the United States and the property of the said county of Osage, state of Oklahoma, with the intent then and there of them the said defendants to cheat and defraud the said county of Osage, state of Oklahoma, and that the said relators did thereafter, on the 16th day of August, 1923, and on various other dates and occasions down to and including the 9th day of February, 1927, in pursuance of said agreement and conspiracy and to effect the object thereof, willfully, unlawfully, and feloniously take and receive of said moneys of Osage county, state of Oklahoma, different sums of money amounting in the aggregate to the said sum of $47,288.99. A full, true, complete, and correct copy of said information is hereto attached, marked 'Exhibit A,' and made a part hereof.

"(2) That, after the filing of said information, warrants were duly issued for the arrests of these relators, and the sheriff of Osage county, Oklahoma, served said warrants and took these relators into custody, and they thereupon gave bond for their appearance pursuant to the laws of this state, and in due course and on the ——— day of January, 1928, entered a plea of not guilty to the said information, and that said cause is now pending in said

district court before the said Honorable Jesse J. Worten, as district judge thereof, and is set for trial on the docket of that court on March 13, 1928, at 9 o'clock a. m.

"(3) These relators further allege and show to the court that the said Honorable Jesse J. Worten is biased and prejudiced against these relators and each of them, and they cannot have a fair and impartial trial before the said Honorable Jesse J. Worten, and further allege and show that the said Honorable Jesse J. Worten has previously formed a fixed opinion against them concerning the law and facts in this case. That on the 20th day of February, 1928, these relators filed in said case, in the district court of Osage county, Oklahoma, their verified application to disqualify the said Honorable Jesse J. Worten from presiding as trial judge of this cause, and in said application these relators alleged and set forth in detail the various reasons why the said Honorable Jesse J. Worten was biased and prejudiced against them and disqualified to try this case and the reasons why they could not obtain a fair and impartial trial in said cause before him, as district judge of said court. A full, true, complete, and correct copy of said application so filed is hereto attached, marked 'Exhibit B,' and made a part hereof as fully as if rewritten herein in full, and these relators show to the court that the allegations and statements contained in said application referred to herein as Exhibit B for identification are true and correct as they verily believe. That on the 20th day of February, 1928, said application to disqualify said Honorable Jesse J. Worten was by him as judge of said court duly heard, and, on the trial thereof, these relators called the said Honorable Jesse J. Worten as a witness and took his statement in open court on said application. A full, true, complete, and correct copy of said statement hereto attached, marked 'Exhibit C,' and made a part hereof as fully as if rewritten herein in full. That on the conclusion of said hearing the said Honorable Jesse J. Worten overruled and denied said application and refused to disqualify and duly entered an order in said court so overruling said application. A full, true, complete, and correct copy of said order is hereto attached, marked 'Exhibit D,' and made a part hereof as fully as if rewritten herein in full.

"(4) These relators further allege and state that, unless a writ of mandamus issue from this court directed to the said Honorable Jesse J. Worten commanding him to disqualify as the trial judge in said cause, he will on the 13th day of March, 1928, proceed to the trial thereof, although these relators show to the court that he is biased and prejudiced against them and has prejudged their case, and that by reason thereof they will be unable to receive that fair and impartial trial that is guaranteed to them by the Constitution and laws of this state.

"(5) These relators further show that the Supreme Court of this state, or the Chief Justice thereof, can assign some other duly and regularly elected and qualified district judge of the state, who is not biased and prejudiced against them and before whom they can receive a fair and impartial trial, to try this cause, and that said relators by making this application do not seek delay in the trial of said cause, but are ready to try the same at any time that it may be assigned for hearing before a fair and impartial judge.

"Wherefore, these relators pray that this court issue a writ of mandamus directed to the defendant, the Honorable Jesse J. Worten, as judge of the district court aforesaid, commanding and directing him to either certify his disqualification as the trial judge in the case of relators above referred to, or to appear in this court on a day and date to be fixed by the order of the court to show cause, if any he has, why he should not so disqualify, and that, upon a final hearing thereon, this court issue a peremptory writ of mandamus against said Honorable Jesse J. Worten peremptorily commanding him to disqualify as aforesaid and for such other and further relief as in the premises is just."

Annexed to the application is a copy of the information, also the findings of fact and the conclusions of law in the case entitled Will H. Chappell v. Harry Buzan, County Treasurer of Osage County, A. B. Ludwick, County Clerk of Osage County, Defendants, and Sam Ingram, Intervener, signed, Jesse J. Worten, district judge; also transcript of proceedings upon the defendant's applica-

tion before Judge Worten to disqualify himself and transcript of his testimony as a witness in said proceeding, on February 20, 1928. In response to the alternative writ, respondent filed his answer on March 2, 1928, which omitting formal parts read as follows:

"Comes now Jesse J. Worten, and, in response to the alternative writ of mandamus, says that he is the judge of the Twenty-Fourth judicial district of the state of Oklahoma, and that as such has overruled the motion to disqualify himself as presiding judge in case No. 1824, wherein the state of Oklahoma prosecutes Sam Ingram, Harry Buzan, and R. A. Correll. As a further answer thereto, the defendant, Jesse J. Worten, says that he is not biased or prejudiced against any of the defendants in said criminal action, but that, on the contrary, his relations with the defendants in said criminal action have been and are now friendly. The defendant by way of further answer alleges that upon the overruling of the motion to disqualify the defendant in this case announces to counsel that he had no desire to try the case in the event the Chief Justice could assign a trial judge to hear said cause, that he immediately wrote the Chief Justice of the Supreme Court asking that some judge be assigned to try said cause, and that, in a telephone conversation with the Chief Justice, he had been advised that in all probability another district judge can be secured for the trial of said cause. By way of further answer, the defendant alleges and states that there are now pending in the district court of Osage county, Okla., some eight or nine criminal cases in the event a severance is requested, which has been indicated would be requested, together with the three civil cases, wherein the same issues are involved as are involved in the present case, which, if the trial court was disqualified to hear, would entail great inconvenience and cause numerous delays. Wherefore the defendant asks that he be not disqualified."

On March 2, 1928, all the parties appeared by counsel, and it was agreed that the Chief Justice would be asked to assign a judge to the district court of Osage

county for two weeks commencing March 12th and that this cause be continued until after the expiration of such assignment. It now appears that when the case was called it was by agreement of parties continued until April 17, 1928.

On April 2, 1928, said respondent filed an amended response, which reads as follows:

"Comes now Jesse J. Worten, Judge of the district court of the Twenty-Fourth judicial district of the state of Oklahoma, and for answer to the application for a writ of mandamus, requiring the said Jesse J. Worten to disqualify as trial judge in the above-entitled cause, and by way of supplemental response thereto, alleges and states that he is neither biased or prejudiced against either of the plaintiffs above named, but, on the contrary, his relations with said plaintiffs have been and are now, so far as he is concerned, friendly. By way of further response your respondent states that he will not disqualify as trial judge or request the Chief Justice of the Supreme Court to assign another district judge to the county of Osage for the purpose of trying said cause unless disqualified by the court."

All the parties appearing by counsel on this 2nd day of April, said cause was submitted upon the pleadings and proof offered in support of the same.

The transcript of the proceedings upon the application for the respondent to disqualify himself to try this case shows that respondent, called as a witness, testified that, in the case of Will H. Chappell v. Harry Buzan et al., Will H. Chappell talked to him concerning certain items of evidence which were offered in that case, that at the time Chappell was discussing with respondent the advisability of calling a grand jury, and that he had a conversation with Mr. Chappell or with somebody in which the contract in question in this case was discussed, which contract was introduced in evidence in the trial of that case. He was then asked, "And do you

not know as a matter of fact that the issues involved in that case were practically the same as the issues that are involved in this case, the issues of fact?" and answered, "I would think that they would be quite similar."

Counsel in their brief say:

"Judge Worten has tried a case against these defendants which involved substantially all the facts charged against them in this case as criminal, has made adverse findings of fact against them which involve the merits of the case about to be tried, and in his adverse findings has expressed in an argumentative way his opinion of the credibility of evidence to be used in the trial of this case both for and against the defendants. These findings of facts and argumentative criticisms of the evidence have been published in full in at least two newspapers of Osage county and thereby given great publicity in the county from which the trial jurors will be selected. An intelligent examination of the veniremen from among whom the trial jury must be selected will involve their being asked if they have read the published findings and criticisms above referred to, and the jurors selected to try the case will almost necessarily be informed of these damaging statements of the trial judge if Judge Worten is permitted to try the case."

The law guards with jealous care the rights of a person charged with crime, with equal care the rights of the people as a matter of security and safety to have crime punished.

The Constitution prescribes that "right and justice shall be administered without sale, denial, delay, or prejudice." Section 6, art. 2, Bill of Rights. By this provision of the Constitution the people have prohibited a judge from trying a cause in which he is prejudiced by or for either party.

In Ex parte Ellis, 3 Okla. Cr. 220, 105 P. 184, 25 L. R. A. (N. S.) 653, Ann. Cas. 1912A, 863, it is said:

"The framers of our Constitution guarded with special care our judiciary and tried to place it above suspicion of unfairness, passion, or prejudice, so that public confidence in our courts would not be shaken, and provided that right and justice should be administered without prejudice. By virtue of this constitutional provision, who can doubt or question the absolute and unqualified right of the citizen when called to answer in a court of justice to demand that his trial shall be before an impartial judge and by impartial jurors? Any other doctrine would place the rights of the citizen which were intended to be protected by this constitutional provision at the mercy or control of the court or judge thereof."

The Code of Criminal Procedure provides:

"No judge of any court of record shall sit in any cause or proceeding in which he may be interested, or in the result of which he may be interested, or when he is related to any party to said cause within the fourth degree of consanguinity or affinity, or in which he has been of counsel for either side, or in which is called in question the validity of any judgment or proceeding in which he was of counsel or interested, or the validity of any instrument or paper prepared or signed by him as counsel or attorney, without the consent of the parties to said action entered of record: Provided, that the disqualifications herein imposed shall not exclude the disqualifications at common law." Section 2629, C. S. 1921.

In Ex parte Owens, 37 Okla. Cr. 118, 258 P. 758, it is said:

"Public confidence in the judicial system and courts of justice of the state demands that cases shall be tried by unprejudiced and unbiased judges, and a denial of a change of judge, applied for on the ground of prejudice, will be presumed to be a denial of justice."

The Supreme Court of the state of Oklahoma, in the case of Son v. Linebaugh, 101 Okla. 291, 225 P. 686, held:

"Where a district judge was instrumental in procuring the institution of ouster proceedings against county officers, and has discussed the merits of such actions with various parties before a trial, and shows by his utterances and actions that he has prejudged the guilt of the defendants, he is disqualified to sit as judge in such actions, or to make an order suspending the defendants from office pending the trial."

In Dennison v. Christopher, 19 Okla. Cr. 467, 200 P. 783, it is said:

"Moreover, the state has an interest in the standing, integrity, and reputation of its courts, and, when constitutional or statutory provisions forbid a judge from acting officially, his action is regarded as transgressing the public policy of the state. Such prohibitions are plainly intended, not only for the benefit of the parties to a suit, but for the general interests of society, by preserving the purity and impartiality of the courts and fostering the respect and confidence of the people for their decisions. 15 R. C. L. 530."

Upon the undisputed facts, and for the reasons stated, we are of opinion that respondent, as district judge, is disqualified to conduct the trial of the information, and for this reason the application for a change of judge should be granted.

Respondent having refused to disqualify as judge, the writ of mandamus, as prayed for, is awarded.