**FARNSWORTH v. SANFORD, Warden.**

No. 9634.

Circuit Court of Appeals, Fifth Circuit.

Nov. 5, 1940.

John F. Finerty, of Washington, D. C., and George S. Hawke, of Cincinnati, Ohio, for appellant.

Lawrence S. Camp, U. S. Atty., and Harvey H. Tisinger, Asst. U. S. Atty., both of Atlanta, Ga., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

Farnsworth, sentenced in the District Court of the District of Columbia for a conspiracy under 50 U.S.C.A. §§ 32 and 34, and imprisoned in Atlanta, was again denied relief by habeas corpus (33 F.Supp. 400) and again appeals. Our former opinions on his case are reported in Farnsworth v. Zerbst, 5 Cir., 97 F.2d 255; Id., 5 Cir., 98 F.2d 541. The present writ was allowed to give opportunity to review those opinions, and to present new contentions touching the jurisdiction of the sentencing court. Before us no attack was made on what we have heretofore decided, and we adhere to it. We before intimated, however, that if it were true that Farnsworth's plea of nolo contendere was forced or unfairly obtained, that the refusal to permit it substituted before sentence by one of not guilty might be an unconstitutional denial of jury trial cognizable on habeas corpus, and suggested that on another petition a more perfect showing might be made on this point. In the present record the stenographic report of the proceedings on the

motion to withdraw the plea appears, and is supplemented by the testimony of several witnesses besides Farnsworth, including the presiding judge himself.

**1.** We are satisfied, as was the court below, that the plea was made knowingly and deliberately and without any undue coercion by anyone. The desire to avoid publicity and the urging by telegrams from relatives that Farnsworth be guided by the advice of his counsel are a sort of "pressure" that may operate on any accused person, but where they do not overpower him they do not avoid a plea of guilty or nolo contendere which they help to induce. His two counsel, described by the judge as "very competent", and again as "eminent", and admitted in this case to be such, testify that they were ready to fight his case through, and that the plea of nolo contendere, while thought by one of them to be the best course for a light sentence, was not pressed upon Farnsworth but he was left to decide for himself. He says he decided on it by the "flip of a coin." The Government had fifty-two witnesses present for the trial, some brought from the most distant parts of the United States, and the vessels of the Navy, and they had dispersed before Farnsworth after three days indicated by a letter to the judge that he wished to withdraw the plea. The judge treated the letter as a motion and five days later fully heard it. The record indicates a full and patient hearing. Farnsworth's reflections upon the attitude of the judge are not supported. The judge decided that the plea was not a forced one, and that after the departure of the witnesses it ought not to be suffered to be withdrawn. That was an exercise of discretion which another court on habeas corpus may not overrule.

**2.** A point is made that the judge violated the privilege attaching to communications between counsel and client by calling the two counsel as witnesses after Farnsworth had testified. Farnsworth was present, having just discharged them as his counsel, and made no protest. The judge did not ask what Farnsworth had said to the counsel, but only whether they had exerted "pressure" on him to plead, as he was contending. This they denied, and each testified what they had done and said in the conference about the plea. When in such a proceeding a client charges his counsel with misconduct and discharges them, we think he has no right to be free of contradiction in testifying about the misconduct. He waives the privilege of the communication by himself making it an issue to be tried and testifying about it. Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed. 488. Neither the judge in his questions nor the counsel in their answers went beyond the narrow issue of what pressure they brought to bear on the accused. If a case of pressure or even bad advice had appeared, probably discretion would have been exercised otherwise. If there was an error in hearing this evidence, it was not one that a habeas corpus court could redress.

**3.** But it is now urged that Farnsworth was denied the assistance of counsel unconstitutionally, and under Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, the court lost jurisdiction to sentence him, and the Attorney General his power to confine him. As has been said, he had able counsel until after his plea was entered. It appears that on writing the judge about withdrawing it he decided to discharge his counsel and engaged an attorney named Isenhauer to be present when the motion to withdraw was heard but he was not to be active until a trial was secured. Farnsworth testified first that Isenhauer was present, but later that he did not see him but supposed he was; that from his experience with courts martial he was so confident he would be allowed to change his plea that he did not think he needed a lawyer, or to say much himself. He discharged his first counsel formally, after they had stated to the court that Farnsworth desired to present personally his reasons for changing the plea. Later in the hearing he asked the judge if he was not entitled to counsel and the judge replied: "I thought you said you did not wish a lawyer, you wished to handle the matter yourself." Farnsworth replied: "Well, let it go"; and the judge said: "You may ask such questions as you wish."

Before sentence Farnsworth employed still another attorney, Tedrow, who filed a motion in arrest of judgment on the ground that a plea of nolo contendere could not be lawfully received in a case where no fine could be imposed. Tedrow had had a conversation with the judge on that law point, which gave rise to a misunderstanding with the judge, and Tedrow decided to withdraw the motion in arrest and make the point before other judges on ap-

peal or habeas corpus, and so informed Farnsworth. We think the point not sustainable. Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347. Tedrow advised Farnsworth to say nothing when called for sentence. He stood with Farnsworth. The judge made some remarks about the gravity of the case, and asked the prisoner if he had anything to say. Tedrow answered no. Farnsworth started to speak and Tedrow pulled his arm and told him to shut up. After sentence Tedrow ceased his activities, no appeal was entered, no habeas corpus applied for, and Farnsworth went to the penitentiary. Farnsworth contends, and presents some hearsay evidence, that the judge scared Tedrow away from the case. The judge and Tedrow deny this. Tedrow says he decided it was better for Farnsworth to have another lawyer and so advised him, and wrote a letter also to that effect which it seems never reached Farnsworth. We think on the record before us that the judge interfered in no way with any of Farnsworth's counsel as respects their employment and discharge. It cannot be said that he denied Farnsworth the right to be represented by his counsel contrary to the Constitution. There was no request and no necessity for the court to appoint counsel, if that be ever a constitutional duty. Farnsworth, forty-three years old, was a graduate of the United States Naval Academy and of Massachusetts Institute of Technology, and had served for years in the Navy and reached the rank of Lieutenant-Commander before his discharge therefrom. He says he had acted on many courts martial and been prosecutor in twelve. Both intelligence and experience and knowledge of his rights were abundantly present. He had ruined himself by drink but had no liquor for seven months before his plea and sentence. He was nervous and ill, but no one, not even himself, claims he was mentally incompetent. His chief handicap was that his teeth had all been extracted and he could not talk very well. There was no such situation as appeared in Johnson v. Zerbst. We find no room to say the sentence is unconstitutional and void because of a denial of the right to the assistance of counsel.

4. There remains the newly raised contention that the case was one affecting Japanese ministers, and within the original jurisdiction of the Supreme Court and not within the jurisdiction of a district court.

The indictment alleged "That one John Semar Farnsworth and one Yosiyuki Itimiya and one Akira Yamaki, each late of the District of Columbia * * * on the first day of January, 1933, and continuously * * * to July 13, 1936, did wilfully * * * conspire * * * and agree together and with each other and with divers other persons" to commit described offenses against Sect. 32 of Title 50 of the United States Code Annotated. After stating overt acts by Farnsworth only, it concludes: "So the Grand Jurors aforesaid on their oath aforesaid do say, that they, the said John Semar Farnsworth, and the said Yosiyuki Itimiya and the said Akira Yamaki, in the manner and by the means aforesaid * * * did feloniously combine, conspire, confederate and agree together and each with the other and with divers others to the Grand Jurors unknown to commit divers offenses * * *, and did each do acts to effect the object of said unlawful conspiracy, against the form of the statute * * *." The indictment plainly charges all three of the named persons with the crime of conspiracy. It does not appear therefrom that Itimiya and Yamaki had any diplomatic status. But a letter from the Department of State in the record before us states that each of them was a commander in the Japanese navy, that Itimiya was on Oct. 3, 1933, certified to the Department as Naval Attaché to the Japanese Embassy, and that he left for Japan on Dec. 29, 1934; that Yamaki was certified as an Assistant Naval Attaché to the Japanese Embassy Oct. 25, 1934, and left for Japan Nov. 6, 1935. Neither was arrested under the indictment, which was returned by the Grand Jury August 11, 1936.

The Constitution provides, Art. 3, Sect. 2, clauses 1, 2, "The judicial Power shall extend to * * * all Cases affecting Ambassadors, other public Ministers and Consuls." "In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction." The questions are, Was Farnsworth's case one affecting an ambassador or public ministers, so as to be within the original jurisdiction of the Supreme Court? Was that jurisdiction exclusive of the district court?

The indictment, charging Itimiya and Yamaki as well as Farnsworth with crime, proposed a case affecting them if

they were public ministers. If they were, the absence of an allegation in the indictment to that effect would make no difference. We assume, and it is conceded, that an attaché to an embassy is a public minister, or at least that what affects him affects the ambassador. But this is true only so long as the attaché is attached to the embassy. When he ceases to be attached and returns to his own country he is no longer entitled to diplomatic immunity. A case against him afterwards instituted does not affect an ambassador or minister within the meaning of the Constitution. This was apparently the ground on which the Supreme Court refused a certiorari to remove an indictment from the court of the District of Columbia to the Supreme Court against one who had been the "political agent" of Switzerland, but who had resigned as such a few days before the indictment was returned. Ex parte Hitz, 111 U.S. 766, 4 S.Ct. 698, 28 L.Ed. 592. In Davis v. Packard, 7 Pet. 276, at page 284, 8 L.Ed. 684, we find quoted from Lord Ellenborough, Marshall v. Critico, 9 East. 447, "This [the foreign minister's privilege from arrest] is not a privilege of the person, but of the state he represents; and the defendant having been divested of the character in which he claims that privilege, there is no reason why he should not be subject to process as other persons."

But if that be a misunderstanding of the Hitz case, we think that when the Japanese defendants were not arrested and Farnsworth was arraigned alone there was as complete a severance of the case against him as though he alone had been indicted. The case to be tried then in no substantial way affected the ex-attachés in Japan, or the Japanese Ambassador. Each of course would be concerned as the trial might involve reflections on the character and conduct of the ex-attachés, but the case in its results would not touch the person or goods or servants of any of them. The words of the Constitution quoted above have never been given their broadest meaning. In United States v. Ortega, 11 Wheat. 467, 468, 6 L.Ed. 521, where one was indicted for assaulting an ambassador, it was held the case affected only the accused and the United States; although self-defense because of first attack by the ambassador might be the issue to be tried. United States v. Ortega, Fed.Cas.No.15,971, 4 Wash.C.C. 531; United States v. Liddle, Fed.Cas.No.15,598, 2 Wash.C.C. 205. The ambassador's feelings, his integrity as

a witness, and his standing as a man might all be involved, but he is held not affected. A broad construction of the words was again denied when it was held that they did not include the ministers and consuls of the United States. Ex parte Gruber, 269 U.S. 302, 46 S.Ct. 112, 70 L.Ed. 280. And in Ohio v. Agler, 280 U.S. 379, 50 S.Ct. 154, 74 L.Ed. 489, it was held these constitutional provisions did not exclude from State court jurisdiction a divorce suit against a foreign consul. We think on the arraignment of Farnsworth alone his case was not one within the original jurisdiction of the Supreme Court, and could not have been removed for trial to that court.

But if we are wrong again, we still think the jurisdiction of the Supreme Court over such a case is not exclusive. It is now settled that the words of the Constitution do not make the original jurisdiction of the Supreme Court to be exclusive, and they leave Congress free, not indeed to infringe upon the jurisdiction of the Supreme Court, but to give concurrent jurisdiction to the lower courts. This has been done as to cases affecting consuls from the beginning. The ancient statute, now 28 U.S.C.A. § 341, which affirms exclusive jurisdiction in the Supreme Court as to diplomats, if its expression "suits or proceedings" includes criminal cases, speaks only of those "against" the ambassador or public minister, and not those which may only affect him. Congress has always in the broadest terms vested jurisdiction to try criminal cases in the lower courts. By the present statute, 28 U.S.C.A. § 41(2), it grants original jurisdiction to the district courts "Of all crimes and offenses cognizable under the authority of the United States." There are no exceptions made. There is thereby no unconstitutional intrusion on the original jurisdiction of the Supreme Court. It was so held in 1793 in United States v. Ravara, Fed.Cas.No.16,122, 2 Dall. 297. That case was cited with approval in Ames v. Kansas, 111 U.S. 449, at page 465, 4 S.Ct. 437, 28 L.Ed. 482, where circuit court jurisdiction under the removal statutes was upheld touching a suit to which a State was a party. The Supreme Court's original jurisdiction was again held not exclusive in United States v. Louisiana, 123 U.S. 32, 8 S.Ct. 17, 31 L.Ed. 69. We hold in mind the difference in status between consuls and diplomats under international law and the differences

which Congress in legislating has made between them. We are aware that neither the Supreme Court nor a lower court would arrest for trial a diplomatic person while he is such, because of his privilege. We are thinking of cases in which he is not arrested but only "affected" otherwise. If this be such a case we hold the jurisdiction of the Supreme Court not exclusive, and that of the district court valid.

Judgment affirmed.