**Curtis L. LAWSON, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16351.**

Court of Criminal Appeals of Oklahoma.

Oct. 20, 1971.

Rehearing Denied Dec. 10, 1971.

Second Rehearing Denied Feb. 2, 1972.

An appeal from the District Court of Tulsa County; R. F. Martin, Judge.

Curtis L. Lawson, pro se.

Larry Derryberry, Atty. Gen., Ray Naifeh, Asst. Atty. Gen., Mike Jackson, Legal Intern, for defendant in error.

BUSSEY, Presiding Judge:

Curtis L. Lawson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, for the offense of Perjury; his punishment was fixed at one year imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Virginia Haynes testified that she was the Deputy District Court Clerk, assigned to Division Two of the Tulsa District Court, and was so employed on the 10th and 12th days of November, 1969. She testified that she was present during a hearing before Judge Simms involving the defendant on the days in question. She testified that the defendant was called to testify by his attorney and was sworn to tell "the truth, the whole truth, and nothing but the truth, and the cause of the trial, so help you God." The defendant responded to Mrs. Haynes' oath, "I do," and took the witness stand.

Glen Dorrough testified that he was a Court Reporter for Judge Simms, and was so employed on November 10th and 12th, 1969. He testified that he had reported the case of State of Oklahoma v. Curtis L. Lawson, and that the recorded testimony in the transcripts was recorded by him exactly as it transpired at the proceedings conducted by Judge Simms on the days in question. He testified that the defendant testified that he did not personally appear before the Judge and waive Preliminary Hearing on September 4, 1969.

Jack Morgan testified that he was an Assistant District Attorney for Tulsa County on September 4, 1969. He testified that on September 4th, that the defendant and his attorney, John Tanner, appeared in court before Judge Amos T. Hall, and the defendant stood up and made the announcement that Preliminary Hearing in two cases would be waived. On cross-examination, Morgan testified that he did not recall if a record was made of the proceedings at the Preliminary Hearing waiver, but that a minute clerk was present.

John Tanner testified that he was employed by defendant as his attorney, and that he appeared with the defendant on September 4, 1969, and that he had a conversation with the defendant outside the chambers of Judge Hall. The defendant objected to this line of questioning, because of the privilege between client and attorney, wherein the trial court directed Mr. Tanner to answer the questions. He testified that after this conversation, he and the defendant appeared before Judge Hall and waived Preliminary Hearing. On cross-examination, Mr. Tanner testified concerning discussions regarding defendant's pleading guilty to the charge, making restitution, and the proposed disposition of the cases.

William Flanagan was called as a witness for the defendant, and testified that

he was employed as a Minute Clerk for Judge Amos Hall. He testified concerning the procedures usually followed in writing Minutes. He testified that the minute concerning the cases, wherein the defendant waived Preliminary Hearing, was partially stamped and partially typewritten. He testified that he did not have any independent recollection of what transpired on September 4, 1969.

■ The first proposition states, "District Judge Robert D. Simms was without authority to have defendant committed to jail to answer the charge of perjury, therefore, the subsequent trial was an excess of authority by the Court." The briefs of the parties reflect that on the 10th day of November, 1969, the defendant appeared in the District Court of Tulsa County before the Honorable Robert D. Simms on a Motion for New Trial on cases CRF–69–1115 and CRF–69–1217. In support of his Motion for New Trial, the defendant testified that he did not waive Preliminary Hearing in the cases before Judge Amos Hall. Judge Simms, thereafter, conducted an extensive hearing, wherein Judge Hall, John Tanner, and Jack Morgan testified that the defendant did personally appear and waive Preliminary Hearing. Judge Simms, thereafter, ordered defendant charged with Perjury, set bond at $7,500.00, and committed the defendant to jail. Judge Simms cited as authority for this action, 21 O.S. 1961, § 500, which states:

"Whenever it appears probable in any court of record, that any person who has testified in any action or proceeding in such court has committed perjury, such court must immediately commit such person by an order or process for that purpose to prison or take a recognizance with sureties for his appearance and answering to an indictment for perjury."

The defendant cites as authority, Ex parte Ellis, 3 Okl.Cr. 220, 105 P. 184 (1909), which appears to be the only case rendered construing this Section. We have carefully examined Ellis, supra, and are of the opinion that the same is distinguishable from the case at bar. In Ellis, supra, the petitioner filed his application for Writ of Habeas Corpus, alleging that he was being illegally incarcerated in Texas County, pending action of the District Court on a charge of Perjury. In an action pending in said county, entitled "J. H. Morris, Plaintiff, v. R. H. Matthews, Defendant," said defendant and one Henry Mann corroborated an affidavit for a change of judge, stating that the county judge was prejudiced. On the same day, the county judge, R. L. Davis, filed a complaint before a Justice of the Peace, wherein he charged the petitioner with the crime of Perjury in making said corroborated affidavit for change of judge. Petitioner was arrested and taken before the Justice of the Peace, where he filed a Motion for Change of Venue, and thereupon the County Attorney dismissed the case. Immediately thereafter, petitioner was arrested on a warrant issued by the same R. L. Davis, County Judge, without a complaint having been filed. The following day, Judge Davis summarily ordered the petitioner to be held for trial in the District Court of Texas County to answer to the charge of Perjury. In granting the Writ of Habeas Corpus, we stated:

"The first question is: Has a court of record of this state under this provision authority to summarily commit a witness to be held to answer for perjury? We are of [the] opinion that this provision of the laws of Oklahoma Territory, if not repugnant to the Constitution and in conflict with that part of section 17, art. 2, Bill of Rights, which provides, 'No person shall be prosecuted for a felony without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination,' can only be effective while a grand jury is in session in the county. To be effective in the case at bar would make the court the judge of his own case and would violate the maxim, 'Nemo debet esse judex in propria sua causa'—'No man can be a judge in his own case.' The maxim is as old as the

law itself. 'While prosecutions for felonies may be by indictment or information, as they are concurrent remedies,' said this court in Re McNaught, 1 Okl. Cr. 528, 99 Pac. 241, 'we are fully satisfied that the framers of our Constitution intended to abolish the grand jury system, except that it might be invoked for these special purposes, such as the investigation of public officers, the failure of public prosecutors to do their duty, and those peculiar conditions of public disorder which sometimes arise and make prosecutions by information impracticable.' "

The Court further observed that the petitioner was deprived of his liberty "without due process of law" in that no complaint properly verified was filed, and no evidence adduced showing probable cause.

In the instant case, Judge Simms conducted a lengthy hearing on defendant's Motion for New Trial. The defendant testified that he did not waive Preliminary Hearing. Thereafter, his former attorney, an Assistant District Attorney, and a Judge, refuted the statements made by the defendant by testifying that the defendant did, in fact, waive his Preliminary Hearing. Judge Simms, thereafter, ordered the defendant to be held to answer to the charge of Perjury, and fixed bond. Information was filed charging the defendant with Perjury. The defendant was then afforded a fair and proper Preliminary Hearing, wherein it was stipulated between the State and the defense that the Preliminary Hearing would be had by review of the transcript recorded for new trial proceedings. This stage of the proceedings was conducted by Judge Ricketts, and the trial of the defendant was conducted by Judge Martin. The proceedings in the instant case were conducted reasonably and lawfully, and in no manner resembled the unfair and partial proceedings which occurred in the *Ellis* case, supra. We further observe that although the defendant states in his brief that he did object to the court's proceedings with the trial that the

record before this Court does not contain such objections. We further note that the defendant has totally failed to show how prejudice resulted from the trial court's actions in ordering him held to answer to the charge of Perjury. We, therefore, find this proposition to be without merit.

▪ The final proposition asserts that the "Court was without authority to order Plaintiff in Error's former attorney to testify against Plaintiff in Error. Communications between attorney and Plaintiff in Error were privileged." We observe that the crux of the case at bar is whether the defendant testified falsely under oath that he did not waive his Preliminary Hearing. At the Motion for New Trial, wherein the defendant testified that he did not waive Preliminary Hearing, he further testified as follows:

"MR. BAKER: It is Mr. John Tanner, you say was incompetent as your attorney, is that correct?

A. He did not represent my wishes in the trial.

Q. BY MR. BAKER: Do you say now in open court and under oath that he did not adequately and competently represent you as your attorney?

MR. HILL: To which we are going to object, he has already answered that question three or four or five times.

THE COURT: No, he hasn't. What is your answer, Mr. Lawson?

A. Yes, sir."

In Laughner v. United States, 373 F.2d 326 (1967), the Fifth Circuit Court stated:

"Having demanded and obtained a factual judicial inquiry into his claim that the attorney appointed to render him the assistance of counsel for his defense failed to discharge his responsibilities properly, appellant now proposes to invoke the privilege accorded confidential communications between the attorney and his client to eliminate the one source of evidence likely to contradict his allegations. We are unable to subscribe to

this proposition. The privilege is not an inviolable seal upon the attorney's lips. It may be waived by the client; and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue."

The Court further stated in Footnote No. 1:

"The rule that a client waives his privilege by attacking the attorney's performance of his duties seems to have been adopted unanimously by those courts which have dealt with the question. E. g., Farnsworth v. Sanford, 115 F.2d 375 (5th Cir. 1940) (dictum), cert. denied, 313 U.S. 586, 61 S.Ct. 1109, 85 L.Ed. 1541 (1941); United States v. Wiggins, 184 F.Supp. 673, 677–678 (D.C.D.C. 1960), and cases cited therein; United States v. Monti, 100 F.Supp. 209 (D.C. N.Y.1951). It also enjoys impressive scholarly support [see 8 Wigmore, Evidence, § 2327(6) (McNaughton rev. 1961)], has been adopted in the Uniform Rules of Evidence [Rule 26(2) (c)], and is approved by the American Bar Association's Canons of Professional Ethics Canons 37]."

We are of the opinion that the defendant's attack of the professional confidence of his attorney, Mr. John Tanner, waived any claim he might have to confidential communications between an attorney and client relevant to that issue. We, therefore, find this proposition to be without merit.

In conclusion, we observe the record is free of any error which would justify modification or require reversal. The judgment and sentence is accordingly affirmed.

BRETT, Judge (specially concurring).

I concur. This is one of the exceptions provided for an attorney to testify as a witness.