**UNITED STATES of America**

v.

**Julio GUINAND.**

**Crim. No. 88–0201–OG.**

United States District Court,
District of Columbia.

July 11, 1988.

---

Thimi R. Mina, Asst. U.S. Atty., Margaret Pickering, Atty., Dept. of State, Washington, D.C., pro hac vice, for the U.S.

Robert Stanley Powell, Alexandria, Va., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

Defendant is charged with distribution of cocaine in violation of 21 U.S.C. § 841(a) at a time when he enjoyed diplomatic immunity as a member of the administrative staff of the Embassy of Peru. He has moved to dismiss the indictment under the provisions of 22 U.S.C. § 254d, which reads as follows:

Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under section 3(b) or 4 of this Act [22 USCS §§ 254b or 254c], or under any other laws extending diplomatic privileges and immunities, shall be dismissed. Such immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure.

It appears from the submissions of the parties that defendant entered into a narcotic transaction with an undercover agent of the Metropolitan Police Department. Thereafter Sergeant Gonzalez of the Metropolitan Police Department, with the knowledge and approval of an Assistant United States Attorney, spoke with defendant and advised him that he would be subject to immediate deportation from this country under the circumstances unless he agreed to cooperate with the police and the Drug Enforcement Administration. It was represented to defendant that, if he did this, his departure from the country could be delayed until his cooperation had been completed and a reasonable time thereafter. A reasonable time is usually interpreted as thirty days.

It further appears from the pleadings that, following defendant's cooperation with the authorities, the Embassy of Peru terminated his employment and he was given the usual period within which to depart the country. In the interim, he married an American citizen and has been accorded permanent resident alien status by the Immigration and Naturalization Service.

The issue before the Court is whether the immunity with which defendant was cloaked at the time these acts allegedly were committed continues indefinitely or whether that immunity ceases at the time his duties at the Embassy were terminated and he was given a reasonable time within which to depart.

The government, among other exhibits, has filed the declaration of the legal adviser of the Department of State, Judge Abraham Sofaer. The Court notes that the Supreme Court has stated in *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 184–85, 102 S.Ct. 2374, 2379, 72 L.Ed.2d 765 (1982): "Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." Accordingly, the Court notes from the declaration of Judge Sofaer:

> The United States Government has consistently interpreted Article 39 of the VCDR to permit the exercise of U.S. jurisdiction over persons whose status as members of the diplomatic mission has been terminated for acts they committed during the period in which they enjoyed privileges and immunities, except for acts performed in the Exercise of the functions as a member of the mission. (Article 3 of the VCDR lists the permissible functions of a diplomatic mission.) The Department of State has publicly stated this interpretation to U.S. law enforcement authorities, to Congress, and to members of foreign diplomatic missions in the United States.

An official State Department publication intended to provide guidelines to law enforcement authorities on various categories of foreign missions personnel and the privileges and immunities to which they are entitled, states, in pertinent part, as follows:

... criminal immunity expires upon the termination of the diplomatic or consular tour of the individual enjoying such immunity, including a reasonable period of time for such person to depart the U.S. territory. Thereafter, if the law enforcement authorities of the United States can obtain personal jurisdiction over a person alleged to have committed criminal acts in the United States, normal prosecution may go forward.

United States Department of State, *Guidance for Law Enforcement Officers: Personal Rights and Immunities of Foreign Diplomatic and Consular Personnel,* Department of State Publication 9533 at 18 (1987). The declaration of Judge Sofaer also states that this official interpretation of the pertinent sections of the Vienna Convention on Diplomatic Relations,[1] of which the United States is a signatory, has been communicated to all diplomatic missions.

On March 21, 1984, the Secretary of State declared:

> On the termination of criminal immunity, the bar to prosecution in the United States would be removed and any serious crime would remain as a matter of record. If a person formerly entitled to privileges and immunities returned to this country and continued to be suspected of a crime, no bar would exist to arresting and prosecuting him or her in the normal manner for a serious crime allegedly committed during the period in which he or she enjoyed immunity. This would be the case unless the crime related to the exercise of official functions, or the statute of limitations for that crime had not imposed a permanent bar to prosecution.

Circular Diplomatic Note, March 21, 1984, at 2–3. The Court, though not bound by the State Department's interpretation of the Vienna Convention, finds that it is entitled to great weight and that it is sup-

---

1. The pertinent article of that Convention is Section 2 of Article 39:

   When the functions of a person enjoying privileges and immunities have come to an end, such privileges and immunities shall normally cease at the moment when he leaves the country, or on expiry of a reasonable period in which to do so, but shall subsist until that time even in case of armed conflict. However, with respect to acts performed by such a person in the exercise of his functions as a member of the mission, immunity shall continue to subsist.

ported by such authorities as have been brought to the attention of the Court. The fact that there is little judicial authority on the precise point with which the Court is confronted is indicative of the fact that when one who enjoys diplomatic status and immunity is faced with the alternative of departing from the country or going to trial on criminal charges, he elects departure.

*Farnsworth v. Sanford,* 115 F.2d 375 (5th Cir.1940), illustrates the point. Farnsworth, a graduate of the United States Naval Academy and the Massachusetts Institute of Technology, had attained the rank of lieutenant commander before his discharge from the Naval service. He was charged with conspiracy to violate the laws of the United States, together with two Japanese Naval Attaches who enjoyed diplomatic status. Rather than face trial in this country, the two Japanese departed. Farnsworth was tried, convicted and imprisoned. The Court referred to the case of *Ex Parte Hitz,* 111 U.S. 766, 4 S.Ct. 698, 28 L.Ed. 592 (1884). There the Supreme Court had refused *certiorari* to remove the case from the Supreme Court of the District of Columbia of one who had been the political agent of Switzerland but who had resigned as such a few days before the indictment was returned. The Fifth Circuit in *Farnsworth* quoted from Lord Ellenborough in *Marshall v. Critico,* 9 East. 447: "This [the foreign minister's privilege from arrest] is not a privilege of the person, but of the state he represents; and the defendant having been divested of the character in which he claims that privilege, there is no reason why he should not be subject to process as other persons." 115 F.2d at 379 (citing *Davis v. Packard,* 7 Pet. 276, 8 L.Ed. 684 (1833)).

A number of civil actions in which diplomatic immunity was involved have been brought to the attention of the Court. An early case in the Supreme Court of Pennsylvania, *Dupont v. Pichon,* 4 Dall. 321, 1 L.Ed. 851 (1805), involved one who had been the chargé d'affaires of France. It appears that he had been superseded in that office by another. The sheriff sought to collect a judgment against the chargé d'affaires for a debt which he had contracted but had not paid. In the meantime, he had been succeeded in office by another. Mr. Pichon had been anxiously making all necessary arrangements for his return to France with his family and his delay had been occasioned by the closing of his official business as chargé d'affaires and arranging transportation. In view of Mr. Pichon's status at the time the debt was incurred, the judges discharged him absolutely from that process.

In a recent English case, *Empson v. Smith,* 2 All E.R. 881 (1965), a Canadian attaché who had diplomatic immunity while in England was sued by his landlady for the reason that he had not paid his rent after his transfer to another assignment. The lower court dismissed the action on the grounds of diplomatic immunity. The Court of Appeal held that the dismissal was improper and remanded the matter to the lower court for trial on the lease. The Court interpreted the Vienna Convention, of which Great Britain was a party, and held that the defendant's diplomatic immunity from legal process in England had ceased and that plaintiff was entitled to have her action tried. The Court, speaking through Lord Justice Diplock, held:

> If the defendant had applied before the commencement of the Diplomatic Privileges Act 1964, to have the plaintiff's action dismissed there would have been no answer to his application, but he delayed until November, 1964. By that date his right to immunity from civil suit had been curtailed by that Act, which applies to the United Kingdom the provisions of the Vienna Convention on Diplomatic Relations, 1961, contained in Sch. 1 to the Act of 1964. By the combined effect of art. 31 and art. 37 of Sch. 1, as a member of the administrative and technical staff of the mission his immunity from the civil jurisdiction of the courts of the United Kingdom does not extend to acts performed outside the course of his duties. Whether he is entitled to immunity in any particular suit no longer depends solely on his status but also on the subject matter of the suit.

*Id.,* 2 All. E.R. at 886.

In view of the foregoing and since it clearly appears that defendant is no longer

clothed with diplomatic immunity and that he has failed to depart from the United States within a reasonable time after his cooperation with the police and since, although he presently has the status of permanent resident alien, that status affords him no immunity from prosecution, the motion to dismiss is denied.